2024 IL App (2d) 230338-U
No. 2-23-0338
Order filed January 16, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of McHenry County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 22-CF-1001 |
| | ) | |
| BRETT J. NORRIS, | ) ) | Honorable Tiffany E. Davis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Schostok and Kennedy concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Trial court's detention order is reversed and remanded.

¶ 2     In this interlocutory appeal, defendant, Brett J. Norris, requests that we vacate the trial court's September 26, 2023, order, granting the State's petition to detain him pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1]

---

[1]The Act is also commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act.  Neither name is official, as neither appears in the Illinois Compiled

See also Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Specifically, defendant contends that the court erred because, where he had been ordered released on cash bond prior to the Act's effective date, the State lacked authority to petition for his detention and, further, that the court erred in finding that he posed a threat of harm to any person or the community and that no conditions could mitigate that threat. For the following reasons, we reverse and remand.

¶ 3                                I. BACKGROUND

¶ 4      On December 8, 2022, defendant was charged by felony complaint with four drug offenses. 720 ILCS 570/401(a)(2)(A) (West 2020) (class X and class 1); 720 ILCS 570/402(c) (two class 4 charges). On December 29, 2022, the grand jury returned a bill of indictment, adding a fifth charge; specially, another class 4 charge. 720 ILCS 570/402(c) (West 2020). Defendant was incarcerated in the McHenry County jail but ordered released with the condition of posting a $90,000 bond.

¶ 5      On September 18, 2023 (*i.e.*, the day the Act became effective), defendant moved pursuant to sections 110-5 and 110-7.5(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-5, 110-7.5(b) (West 2022)), as amended by the Act, for a release from custody with, if necessary, conditions. He argued that he was unable to post the monetary bond previously set and, further, that, because the court had already ordered his release on the condition of posting monetary bail, he was entitled, pursuant to section 110-5 of the Code, to a hearing and release from

_____

Statutes or public acts.

custody with any conditions the court deemed appropriate. Defendant noticed the motion for September 26, 2023.

¶ 6 On September 26, 2023, the State filed a petition to detain defendant, arguing that the charges against defendant were detainable under section 110-6.1(a)(1) of the Code (*id.* § 110-6.1(a)(1)), because defendant's pretrial release posed a threat to community safety, and, pursuant to section 110-10(b) (*id.* § 110-10(b)), no condition could mitigate that threat.

¶ 7 The same day, the trial court held a pretrial release hearing. The State explained that the court was hearing its verified petition to detain defendant, as well as defendant's motion for pretrial release. The court confirmed that defendant was charged with a detainable offense, specifically, a class X charge for unlawful possession with intent to deliver a controlled substance, which was detainable based on it being non-probationable. It then announced that it would first hear the State's request for detention. The court explained to defendant that he had the right to testify, present witnesses on his own behalf, cross-examine any witnesses called by the State, and confer with his counsel. Moreover, the court explained that, if the State sustained its burden, defendant could be detained pretrial, whereas, if the State did not sustain its burden, it would consider what conditions of pretrial release, if any, were necessary.

¶ 8 The State's proffer included that, on December 8, 2022, narcotics officers conducted surveillance on a residence on Prairie Avenue in McHenry, where they suspected frequent drug activity. A Nissan car pulled into the residence's driveway and, when it left, deputy Anthony Crawford followed it until it parked in a restaurant parking lot. Crawford observed defendant exit the Nissan and enter the backseat of another vehicle parked in the lot, at which point he observed the driver of that vehicle get into the backseat with defendant. A short time later, defendant returned to the Nissan, which left the parking lot, and Crawford then performed a "traffic

stop for a traffic violation." Co-defendant Charles Miller was driving the Nissan. When he exited the vehicle, Miller put his hands in the air and said that defendant had "hard," which is a street name for crack cocaine, in a black box in the vehicle. The vehicle search recovered from the glove compartment near the passenger seat, where defendant had been sitting, a black magnetic box frequently used to store narcotics and that, because it is magnetic, can be secreted in other parts of the vehicle. Inside the box were four knotted plastic baggies that contained approximately 18 grams of cocaine. Upon further questioning, Miller said he picked up defendant and Christina (last name unidentified), another individual who was in the vehicle, and that defendant had the black box with him when he entered the vehicle, brought it with him into the Prairie Avenue residence, and the three of them had also stopped at a gas station. They went inside the station, and defendant asked Miller for his keys. Defendant then went outside and met with an individual named Dylan (last name unidentified), and Miller believed a transaction had occurred. Miller was also "certain" that, when they went to the Prairie Avenue address, the purpose of the trip was to sell drugs.

¶ 9 The State continued that defendant agreed to speak to officers and related to them that the cocaine that they found was from an individual named Dominique (last name unidentified) and that he and Miller drove to meet Domineque to obtain the cocaine. Further, the State recounted defendant's "extensive" criminal history, going back to 1998, his periods of imprisonment, positive drug tests, and two occasions where defendant had received the opportunity for drug court probation, but, because he failed to comply with the terms, that probation was revoked.

¶ 10 After debate regarding the sufficiency of the State's petition and the court's decision to allow the State to amend it, defense counsel argued substantively that defendant's motion for modification of pretrial release conditions focused on the fact that conditions existed that could

mitigate any perceived harm to the community. For example, as defendant had a drug history, random drug screens could be imposed, as well as home detention or GPS monitoring to ensure defendant stays within the community, stays away from certain people, and has no contact with Miller or anyone else involved in the incident. Further, counsel noted that defendant was in the passenger seat, not driving, and, according to him, had no idea drugs were in the car. Counsel argued that Miller exited the vehicle and, unprompted, told police the drugs belonged to defendant. According to counsel, the fact that Miller was also facing the same charges suggested that "the State doesn't have enough to charge either one or they're just charging both to see where the shoe falls." Counsel reiterated that any perceived threat to the community could be mitigated and,

"the only thing holding him is the monetary bond condition. He's ready, willing, and able to comply with that. He works in the jail, is a model inmate, is willing to be a model member of society[,] if he's let out on bond today."

¶ 11    Defendant then called his mother, Merri Norris, to testify. Merri testified that defendant is "wonderful" at home, and she has been advocating for him his entire life, as he struggled with behavioral diagnoses, medications, psychiatrists, etc. She has watched defendant make poor decisions, as well as make "huge steps" of progress, but that drug addiction has been difficult to assist. While aware of his extensive record, as she has been "along with him the whole way," Merri stated that "[h]e has never been a threat to society. If anything, he'll give the shirt off his back for anybody, but he has a problem making friends. He's got [*sic*] poor choices." Merri explained that, if defendant were released, she strongly felt that, with help from his psychiatrist and addiction counseling groups, as well as staying away from certain individuals, he is capable of success. Merri has lived in McHenry County since 1978. The court offered defendant the opportunity to testify and consult his attorney, however, he declined.

¶ 12    The State argued that the threat to the safety of the community stemmed from the fact that defendant had around 18 grams of cocaine in multiple baggies and appeared to be engaged in a drug transaction.    Further,

> "[T]here was not just a threat of overdose from persons who *** defendant could be dealing cocaine to, but there's the threat to all the persons in the families of individuals who suffer from addiction.    This isn't just the threat of overdose to the community.    It is the havoc that drug dealing and drugs in the community wreaks on children and the partners of these people that are addicted to drugs.    So I believe that there is a *** real and present threat to the safety of persons or people within this community *based on *** defendant's actions in dealing with narcotics*."    (Emphasis added.)

¶ 13    After hearing additional argument, the court announced that, the cause coming for hearing on "the State's verified petition to continue to detain defendant pretrial," defendant having previously been given a bond amount and remaining incarcerated, it was granting the State's petition for pretrial detention and denying defendant's request to set pretrial release.    The court took judicial notice of the pretrial services bond report, noted the lengthy prior criminal history, and took into account defense counsel's argument that Miller, the driver of the vehicle, is the person who claimed the drugs belonged to defendant.    However, the court noted defendant's admission that he had cocaine and that he and Miller went out to obtain cocaine, as well as the packaging and weight, consistent with possession with intent to deliver, and "the rest of the proffer provided by the State."

¶ 14    In addition, the court considered statutory factors as to what conditions, if any, would reasonably ensure defendant's appearance, the safety of any person or the community, and the likelihood of defendant's compliance with those conditions.    The court found that defendant

"may pose a real and present threat to the safety of Charles Miller, any person, or the community based on the specific articulable facts." It found the proof evident and presumption great that defendant committed a detainable offense and that no condition or combination thereof could mitigate the real and present threat. The court found notable that defendant had previously been given drug court probation, where there exists close monitoring, but he violated those closely-monitored conditions by, for example, continuing to use controlled substances and moving without permission of the drug court team and without that team knowing where he went for a few weeks. Further, the court noted that, although Merri testified that defendant might be capable of success with the help of addiction services, defendant already received, through drug court probation, a chance to demonstrate that he could comply with terms similar to those of pretrial release and he did not comply. The court ordered defendant detained and that he was to have no contact with Miller while defendant remained in custody.

¶ 15    In its written order, dated September 26, 2023, the court summarized its findings and reasons for concluding that defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case,

> "For the reasons stated on the record, detention petition granted over objection. State's proffer was based on reliable information. Grand jury returned a true bill of indictment. The court considered all statutory factors enumerated in 725 ILCS 5/110-6.1 including but not limited to (g).
>
> State proffered defendant was the passenger in a vehicle with a codefendant driver whom implicated the defendant for the narcotics found within the glove box of the vehicle inside a magnetic box containing multiple baggies of a controlled substance. See record

for rest of proffer court considered. Defendant is charged with a Detainable Class X felony and the proof is evident and presumption is great that Defendant committed this offense by clear and convincing evidence.

The Defendant is *a possible threat to the safety of a potential State witness whom implicated the defendant as well as the community* based on the facts proffered by the State.

This Defendant has an extensive criminal history with multiple IDOC incarcerations. Defendant was given the opportunity for Drug Court Probation in the past, which is much more difficult and has similar restrictions and requirements to pretrial release conditions, but he failed to comply with the terms and conditions of Drug Court. Drug court probation was revoked and defendant was sentenced to IDOC. Defendant committed new offenses while on drug court probation. Due to this, and other factors of record, no conditions of pretrial release can mitigate the threat to safety."[2] (Emphasis added.)

---

[2]Two written orders appear in the record. Based on comments made at the end of the hearing, we believe the first was drafted by the State, and the second was amended by the trial judge. The version block quoted above appears to be that drafted by the court. The one other order in the record reads,

"For the reasons stated on the record.

Defendant is charged with a [d]etainable Class X felony and the proof is evidence and presumption is great that defendant committed this offense.

The Defendant is a threat to the safety of Charles Miller as well as to the community based on the facts proffered by the State.

¶ 16    On September 29, 2023, defendant, *pro se*, filed a notice of appeal.   Ill. S. Ct. R. 604(h)(2) (eff. Oct. 19, 2023).   The template notice of appeal form that defendant completed represented that, pursuant to the Act, defendant was appealing the court's order denying pretrial release.

¶ 17                                    II. ANALYSIS

¶ 18                              A. Motion to Dismiss Appeal

¶ 19    Preliminarily, we address the State's motion to dismiss the appeal, which, on December 12, 2023, we ordered taken with the case.   Specifically, the State argues that, under Rule 604(h)(2), the notice of appeal must describe the relief requested and the grounds therefore. Here, the State argues, defendant's notice of appeal did not describe either.   It notes that, in *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 12-13, the court discussed the deficiencies of a notice of appeal where a defendant simply checked the box containing conclusory language without providing any facts, argument, or support for the conclusory claim.   Here, the State points out, defendant used a notice of appeal that provided only three numbered statements, none of which provide facts, argument, or support for defendant's appeal.   The State further argues that, as defendant's memorandum was overdue, he should not be permitted to correct his deficiencies by

_____

This Defendant has an extensive criminal history and was given the opportunity for Drug Court Probation in the past which is much more difficult and has similar restrictions and requirements to pretrial release conditions and he failed to comply with the terms and conditions of Drug Court and in fact Defendant committed new offenses while on drug court probation.   Due to this no conditions of pretrial release can mitigate the threat to safety."

filing one, as the memorandum must support the arguments made in the notice of appeal which, here, did not make any arguments or set forth any reasons for the requested relief. Therefore, the State contends, additional argument would be improper, and the appeal should be dismissed. For the following reasons, we deny the State's motion.

¶ 20 Preliminarily, we note that, on November 30, 2023, the same day the State filed its motion to dismiss and three days after this court issued an overdue notice, defendant filed a memorandum in support of his appeal. As such, the record does, in fact, contain a memorandum. In addition, we ordered defendant's response to the State's motion to dismiss. In his response, defendant notes that *Inman* is distinguishable and, in fact, did not dismiss the appeal before it, despite the notice's described deficiencies. Second, defendant argues, "[t]he timely filing of a notice of appeal is the only jurisdictional step required to initiate appellate review." *People v. Lewis*, 234 Ill. 2d 32, 37 (2009). Rather, a notice confers jurisdiction if, "considered as a whole and construed liberally, it fairly and adequately identifies the complained-of judgment." *Id*. Finally, defendant notes that the universe of possible issues in an interlocutory appeal under Rule 604(h) is small and clearly defined, even without much affirmative elaboration from an appellant, and the court is not forced to create arguments from "whole cloth," as the appellant's arguments can be ascertained in mere minutes by reading the transcript, which courts do even in appeals from final judgments.

¶ 21 We deny the State's motion to dismiss. We agree with defendant that a timely notice of appeal is the only jurisdictional step necessary to initiate our review. *Id*. The notice here is timely, and it apprises this court and the State that defendant is appealing the order denying him pretrial release.

¶ 22    Nevertheless, we agree with the State that the notice fails to comply with Rule 604(h)(2)'s requirement that it describe the grounds for the relief requested.    The failure to describe the grounds for relief requested might, in some cases, ultimately impact an appellant's success on appeal, if the appellant opts not to file the memorandum allowed under Rule 604(h).    For example, the court in *Inman* noted that a defendant's form notice of appeal, upon which he had checked certain boxes without providing any description of the grounds for requested relief (unlike here, the template form in *Inman* allowed that opportunity), did not comply with Rule 604(h)(2). *Inman*, 2023 IL App (4th) 230864, ¶¶ 12-13 ¶¶ 8, 12.    We note, however, that defendant correctly points out that, despite these deficiencies, the court in *Inman* did not dismiss the appeal, which is the result the State seeks here.    Rather, the court noted that, where Rule 604 does not *require* a brief, but simply *allows* the appellant to file a memorandum to support the grounds for relief described in the notice of appeal, the absence of a memorandum or description in the notice puts the court in the position of serving as an advocate, trying to raise arguments on the appellant's behalf, which is certainly improper.  *Id.* ¶ 13.    Accordingly, in such a scenario, the reviewing court essentially evaluates the record and defers to the trial court, presuming that it knew the law and properly applied it.  *Id*. ¶¶ 14-17.

¶ 23    Here, in contrast, while defendant's notice of appeal did not elaborate upon his grounds for requested relief (again, there was not even space provided to do so), he opted to file a memorandum describing those grounds.    We, therefore, are not in the position described by the court in *Inman*, either trying to develop arguments on defendant's behalf or simply deferring to the trial court and making presumptions.    Rather, both this court and the State are in receipt of defendant's grounds for requested relief.    Thus, we do not find the errors with his notice of appeal fatal to his

arguments. In sum, although the notice of appeal does not satisfy Rule 604(h)'s requirements, those defects are not jurisdictional ones and, so, we deny the motion to dismiss.

¶ 24                                 B. Denial of Pretrial Release

¶ 25                                     1. State's Petition

¶ 26    Defendant argues first that the trial court's order denying pretrial release was in error, because the State was not permitted to file a verified petition to detain defendants like him who remain in custody after having been ordered released on the condition of depositing security. In support, defendant relies on cases from the Fifth District appellate court, which have held, in essence, that in the very narrow scenario concerning defendants who were: arrested and detained prior to the effective date of the Act; ordered released on the condition of depositing bond and other conditions; remained detained when the Act took effect; and the State's petition did not satisfy the timing requirements or exceptions thereto under the Act, the untimeliness of the State's petition results in the trial court lacking authority to detain the defendants pursuant thereto. *People v. Rios*, 2023 IL App (5th) 230724, ¶¶ 10-12, 16-18; see also *People v. Swan*, 2023 IL App (5th) 230766, ¶¶ 14, 20, 24; *People v. Vingara*, 2023 IL App (5th) 230698, ¶¶ 18, 22-23. Defendant argues that it was error for the court to consider the petition and that he is "entitled to a hearing under section 110-5(e)." 725 ILCS 5/110-5(e) (West 2022). Defendant recognizes that he did not raise this issue before the trial court, such that forfeiture principles might apply, so he requests that we review it for second-prong plain error and, alternatively, due to counsel's failure to move to strike the State's petition, as an ineffective-assistance-of-counsel claim. We reject defendant's arguments.

¶ 27    As noted by other recent decisions, a critical distinction between the cases defendant cites and this case is that, here, defendant elected to file a motion for the court to review his pretrial

conditions under section 110-5(e). That motion was filed on September 18, 2023, and noticed for hearing on September 26, 2023. On the day of the hearing, September 26, the State filed its petition, which was, essentially, responsive to defendant's motion. Defendant's motion, therefore, effectively triggered consideration of defendant's release conditions under the *amended* Act, and, under the amended Act, the State may also petition the court to deny defendant's release altogether. See *People v. Davidson*, 2023 IL App (2d) 230344, ¶ 17; *People v. Kurzeja*, 2023 IL App (3d) 230434, ¶ 14; *People v. Wetzel-Connor*, 2023 IL App (2d) 230348-U, ¶ 27. Indeed, this possibility was essentially recognized by the court in *Rios*, where it explained that, if a defendant elects to petition to reopen the conditions for release, the result may be detention without any possibility of pretrial release. *Rios*, 2023 IL App (5th) 230724, ¶ 17. Accordingly, here, we do not face the situation addressed by the courts in defendant's cited cases, where the sole petition considered was an untimely one brought by the State.

¶ 28 Moreover, we note that the cross-pleadings here allowed the court to consider many overlapping factors. *Wetzel-Connor*, 2023 IL App (2d) 230348-U, ¶ 27. Accordingly, where defendant moved to reopen the conditions of release and the hearing allowed the parties to argue, and the court to consider, both sides of that issue within the parameters of the Act's provisions, we will not find error with the court's decision to entertain the State's petition. *Id*. In fact, the hearing here reflects that defendant had ample opportunity to present his position, including the chance to call his mother as a witness, and, although he declined it, the opportunity to testify on his own behalf.

¶ 29    As there is no error, there can be no plain error (*People v. Scott*, 2020 IL App (2d) 180378, ¶ 14),[3] and, because the result of the proceeding would not have been different, counsel was not ineffective for not moving to strike the State's pleading (*People v. Cathey*, 2012 IL 111746, ¶ 23).

¶ 30                              2. Clear and Convincing Evidence

¶ 31    Next, defendant argues that the trial court's order should be vacated because the State failed to prove by clear and convincing evidence that: (1) he poses a real and present threat to the safety of any person or the community, and (2) less restrictive conditions would fail to protect any person or the community.    We agree with defendant's first point, which is dispositive and, therefore, need not address the second.

¶ 32    Pretrial release is governed by article 110 of the Code, as amended by the Act.    725 ILCS 5/110 (West 2022).    Under the Code, pretrial release may be denied only in certain situations. *Id.* §§ 110-2(a), 110-6.1.    As relevant here, upon filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community.    *Id*. § 110-6.1(e), (f).    If the trial court finds that the State proved a valid threat to the safety of any person or the community, the court must determine which

_____

[3]See also *People v. Martin*, 2023 IL App (4th) 230826, ¶ 17, also rejecting, under similar circumstances, a defendant's request for plain-error review, but doing so on the basis that, even if the State's petition to deny the defendant pretrial release was improper, that fact was neither clear nor obvious on the day of the detention hearing.

pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). If the trial court determines that the defendant should be detained, the court must make written findings summarizing the reasons for detention, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case. *Id*. § 110-6.1(h)(1).

¶ 33 We review under the manifest-weight-of-the-evidence standard the trial court's factual findings regarding whether the State presented clear and convincing evidence that mandatory conditions of release would fail to protect any person or the community, or the defendant failed to comply with previously issued conditions of pretrial release, thereby requiring a modification or revocation of the previously issued conditions of pretrial release. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A decision is against the manifest weight of the evidence where the court's determination is unreasonable. *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs when the trial court's determination is unreasonable. *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 34 As noted, defendant first challenges the trial court's determination that the State proved by clear and convincing evidence that he is a threat to the safety of any person or the community. 725 ILCS 5/110-6.1(e)(2) (West 2022). Clear and convincing evidence is " 'that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question.' " *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12. Clear and convincing evidence is "more than a preponderance of the evidence and not quite approaching the

beyond-a-reasonable-doubt standard necessary to convict a person of a criminal offense." *People v. Craig*, 403 Ill. App. 3d 762, 768 (2010). The Code provides a nonexclusive list of factors that the circuit court may consider when making a determination of "dangerousness," *i.e.*, that the defendant poses a real and present threat to any person or the community. 725 ILCS 5/110-6.1(g) (West 2022). Specifically, in making this determination, the court may consider evidence or testimony as to factors that include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code. *Id.*

¶ 35 Here, with respect to his alleged dangerousness to the community, defendant notes that the State argued that the person defendant "could be dealing cocaine to" might overdose, and drugs pose a threat "to all the persons in the families of individuals who suffer from addiction." Further, the State asserted that the threat was not only the "threat of overdose to the community. It is the havoc that drug dealing and drugs in the community wreaks on children and the partners of these people that are addicted to drugs." According to defendant, the State's assertions reflect only pure speculation, not evidence. Indeed, he argues, there is no evidence he contributed to anyone's overdose, there exist less-restrictive conditions that could prevent him from having access to or

distributing any drugs, and, in the sentencing context, for example, courts have recognized that it is improper to consider general societal harm as an aggravating factor in drug cases. *People v. McCain*, 248 Ill. App. 3d 844, 852 (1993). Importantly, defendant notes, the trial court here did not primarily rely on the State's argument in finding dangerousness; rather, it found that Miller was identified as a witness and that defendant "may pose a real and present threat" to him. According to defendant, "[t]his is even more speculative. There was [*sic*] never any facts, circumstances, or evidence remotely showing that [defendant] had any animosity toward or any reason to threaten Miller." Defendant asserts that, while he has a criminal history, most of the offenses were non-violent and drug related, and, while he has convictions for obstructing justice and domestic battery, the facts and circumstances of those offenses are unknown and he received only probation for them. Defendant argues, accordingly, that the court's finding that the State presented clear and convincing evidence that he poses a real and present threat to any person or the community, based on the specific facts of this case, is against the manifest weight of the evidence. We agree.

¶ 36 In its brief, the State notes both our standard of review and that the Act offers a nonexclusive list of factors that the trial court may consider in making a determination whether a defendant poses a real and present threat to any person or the community, including "[t]he nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense." 725 ILCS 5/110-6.1(g) (West 2022). Then, its entire substantive argument that the court properly determined that, if released, defendant poses a real threat to Miller and other populations in the community, is that:

> "the trial court specifically addressed the defendant's history of criminal offences, many of which were not just drug or drug delivery related. The Court specifically stated

that defendant is a threat to the witness and co-defendant, Miller, or others in the community. As was explained by the State, the defendant may pose a threat to the families and individuals that suffer from addiction and the havoc that drug dealing wreaks on communities." (Internal citations omitted).

¶ 37 Notably absent from this argument is any *evidence* suggesting that defendant posed a real and present threat of harm. Again, we recognize that factual findings, such as a trial court's determination that a defendant posed a real and present threat to the safety of any person, are generally reviewed deferentially and will not be reversed unless they are against the manifest weight of the evidence. *Indeck Energy Services, Inc. v. DePodesta,* 2021 IL 125733, ¶ 56; *Trottier*, 2023 IL App (2d) 230317, ¶ 13. However, they must still be based on *evidence*. As to the community, the State does not articulate how the present charges reflect a specific threat to the community, such that less-restrictive conditions could not mitigate that harm. Indeed, if the generalized risk of societal harm from drug crimes, alone, was sufficient to establish that any defendant charged with them automatically presents a danger to the community, then the legislature would have made those crimes ineligible for release. Instead, however, defendant is presumed eligible for the release, detainable only if the State presented clear and convincing evidence that, under these specific facts, he posed a real and present threat to community safety. 725 ILCS 5/110-6.1(e)(2) (West 2022).

¶ 38 We find persuasive the rationale in *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18, where the court noted that bare allegations that a defendant committed a violent offense are, alone, insufficient to satisfy the State's burden for detention, because "even those accused of violent offenses are presumed eligible for pretrial release, and it is the State who must justify their pretrial detention." *Id.* Moreover, the court continued,

"This is not to say that alleged facts stating the basic elements of an offense are not relevant or are not part of the proof that no conditions could mitigate the threat posed by a defendant. But more is required. If the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release. In other words, if alleging that defendant discharged a firearm and struck a person was sufficient to show that no conditions of pretrial release could mitigate any threat, then no defendant charged with aggravated battery/discharge of a firearm would ever be eligible for pretrial release. That is clearly at odds with the statute's presumption of eligibility for all defendants, and the plain language of article 110 of the Code indicates that more is required." *Id.*

¶ 39    While the court's comments in *Stock* were addressing whether the State in that case had satisfied its burden of proof that there was no condition or combination of conditions that could mitigate the defendant's threat to the community, we deem them equally applicable to considering the burden of proof as to dangerousness. Here, the State's broad arguments that defendant had engaged in drug crimes, which could result in an overdose and which, generally, wreak havoc on families, was akin to suggesting that no person charged with such a crime could ever be eligible for pretrial release, which is contrary to the Code's requirements. Further, although the State notes that the court also considered defendant's history of other offenses, the court never articulated which ones it may have relied upon, nor does the State in any way describe them or explain how those prior offenses present a risk of harm now (let alone that those unidentified offenses created a harm that could not be mitigated by less-restrictive means).

¶ 40 We also agree with defendant that the court's findings suggest that it primarily found dangerousness based upon defendant's risk of harm to Miller. However, setting aside the fact that, at the hearing, the State never developed an argument that defendant posed a risk of harm to Miller, we find unreasonable the court's conclusion that, because Miller is a co-defendant who implicated defendant, the evidence was clear and convincing that defendant might harm him. Rather, this was only speculation; there was nothing reflecting that defendant ever threatened Miller, for example, or expressed any intention of harming him. In fact, the only evidence presented on dangerousness was through Merri's testimony that "[h]e has never been a threat to society. If anything, he'll give the shirt off his back for anybody[.]"

¶ 41 In sum, the State was required to rebut the presumption of defendant's release by establishing through clear and convincing evidence dangerousness, *i.e.*, that he posed a real and present threat of safety to a person or the community. Where there was no evidence that defendant posed a threat to Miller, nothing beyond the charges themselves to suggest a threat to the community, and no findings describing past offenses that the court deemed reflected a real and present threat to a person or community, the court's finding that the State met its burden was unreasonable. As the court effectively denied defendant's section 110-5(e) motion, which was filed first, where it granted the State's responsive petition, we remand for a new hearing on defendant's section 110-5(e) motion. If the State wishes to file a second or subsequent petition in this case, addressing new claims for detention, it must present "a verified application setting forth in detail any new facts not known or obtainable at the time of the filing of the previous petition." 725 ILCS 5/110-6.1(d)(2) (West 2022).

¶ 42                                              III. CONCLUSION

¶ 43    For the foregoing reasons, the judgment of the circuit court of McHenry County is **reversed and the cause is remanded.**

¶ 44    **Reversed and remanded.**