2026 IL App (2d) 250520-U
No. 2-25-0520
Order filed February 6, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v. JAMES W. ASMA, Defendant-Appellant.

Appeal from the Circuit Court of Lake County.

Honorable Michael G. Nerheim and James K. Booras, Judges, Presiding.
No. 24-CF-2259

JUSTICE MULLEN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in granting the State's petition to deny defendant pretrial release and ordering defendant detained.

¶ 2    Defendant, James W. Asma, appeals from orders of the circuit court of Lake County (1) granting the State's verified petition to deny him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)) and (2) denying his subsequent motion for relief (see Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024)). See Public Acts 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023) (we will refer to these

public acts collectively as the "Acts").[1] On appeal, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. We affirm.

¶ 3                               I. STATEMENT OF FACTS

¶ 4                                  A. Background

¶ 5      On October 30, 2024, defendant was charged by complaint with various offenses, including one count of unlawful possession with intent to deliver 100 grams or more but less than 400 grams of a substance containing fentanyl (720 ILCS 570/401(a)(1.5)(B) (West 2024)), a Class X felony; one count of unlawful possession of 200 grams or more of a substance containing fentanyl (720 ILCS 570/402(a)(11) (West 2024)), a Class 1 felony; and one count of unlawful possession of less than 15 grams of a substance containing cocaine (720 ILCS 570/402(c) (West 2024)), a Class 4 felony. The charges stem from an incident during which the police executed a search warrant and found approximately 245 grams of fentanyl in defendant's apartment and approximately 13.6 grams of cocaine on defendant's person.

¶ 6      On October 31, 2024, the State filed a verified petition to detain defendant. In its petition, the State alleged that defendant was charged with a detention-eligible offense under section 110-6.1(a)(1) of the Code (see 725 ILCS 5/110-6.1(a)(1) (West 2024)). The State further alleged that defendant's pretrial release would pose a real and present threat to the safety of any person, persons

---

[1]Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act." However, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

or the community and that, pending disposition of the case, no condition or combination of conditions could ensure the safety of the community short of defendant's detention.

¶ 7                                B. Detention Hearing

¶ 8      A hearing was held on the State's petition on November 1, 2024, before Judge Michael G. Nerheim. In support of its petition, the State initially contended that the proof is evident or the presumption great that defendant committed the offense of unlawful possession with intent to deliver 100 grams or more but less than 400 grams of a substance containing fentanyl (720 ILCS 570/401(a)(1.5)(B) (West 2024)), a Class X felony. The State asserted that this offense is detainable under section 110-6.1(a)(1) of the Code (725 ILCS 5/110-6.1(a)(1) (West 2024)) because it is non-probationable.

¶ 9      Next, the State contended that defendant's pretrial release would pose a real and present threat to a person, persons, or the community. In support, the State initially cited defendant's public safety assessment (PSA) report, noting that it shows a failure to appear score of three out of six and a new criminal activity score of three out of six. The State also observed that defendant had a decades-long criminal record, which includes convictions of unlawful possession of a controlled substance, theft, and forgery. Defendant's criminal record also shows that he did not abide by court orders in that he frequently failed to appear for court and was subject to multiple petitions to revoke probation. The State then proffered the following factual basis for the offenses at issue.

¶ 10     Detectives from the Gurnee Police Department received information from an informant who had been inside defendant's apartment. The informant observed defendant in possession of two bags, each of which contained 1,000 fentanyl pills. The informant told the detectives that defendant was trying to sell the fentanyl pills. The informant also indicated that he or she saw a pistol and an AK-47.

¶ 11 Acting on the informant's tip, the detectives obtained a search warrant for defendant's apartment. On October 30, 2024, while surveilling defendant's residence, officers from the Gurnee Police Department observed defendant enter a vehicle and leave the premises. The officers conducted a traffic stop of defendant and executed the search warrant. Inside the residence, the officers found two plastic bags containing blue pills with an "M30" stamp on them. Based on their training and experience, the officers identified the blue pills as fentanyl. One of the bags was marked with the number "1,000" on it. The other bag did not have any markings. The two bags of blue pills weighed 245 grams. The bags were found in a dresser. Defendant's birth certificate and the title to his truck were recovered from the same dresser. The officers also found two prescription bottles in the apartment, one with hydrocodone and the other with unidentified pills. Neither of the prescription bottles bore defendant's name. Further, the officers found a bag of approximately 15 chalky pink pills with red stamping that appeared consistent with methamphetamine pills. The pink pills and the substances in the prescription bottles were sent to a lab for confirmation and identification. Additionally, the officers discovered two katana swords and a machete under the couch in the living room, three scales, 13 cell phones, and a realistic-looking airsoft AK-47 with the orange tip removed. The officers noted that the front door to the apartment had been nailed shut.

¶ 12 The State further proffered that when defendant was arrested, officers found a baggie in defendant's front pocket. The baggie contained a white powdery substance. Defendant told the officers that the substance was cocaine and that it weighed 13.6 grams. Based on prior training and experience, the officers confirmed the substance was cocaine and that it weighed 13.6 grams. Defendant also had approximately $1,200 in assorted United States currency on his person at the time of his arrest.

¶ 13    After setting forth the proffer, the State noted that in *People v. Johnson*, 2023 IL App (5th) 230714, the court held that the threat to safety required for denial of pretrial release is not limited to the threat of a defendant committing violent criminal acts. In *Johnson*, the court upheld the denial of pretrial release where the defendant was charged with selling crack cocaine. In affirming, the *Johnson* court noted that the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq*. (West 2024)) was promulgated in part due to rising instances of drug abuse and its resultant damage to the peace, health, and welfare of Illinois citizens and to penalize the illicit traffickers or profiteers of controlled substances who propagate and perpetuate the abuse of such substances with reckless disregard for its consumptive consequences upon every element of society. The State argued that beyond the dangers that controlled substances typically pose, fentanyl is incredibly dangerous because of its extreme lethality, especially in the form of pills "where someone could be unaware of what they are taking." The State noted that in addition to the possession of a controlled substance, defendant in this case had in his home an airsoft rifle with the orange tip removed, thereby intending to mimic an assault rifle, and multiple lethal knives. The State argued that the presence of weapons in defendant's apartment was indicative of "the level of danger this defendant poses to the community."

¶ 14    Finally, the State argued that given defendant's extensive criminal history, his prior failure to abide by court orders, and the facts of the instant case, there are no conditions or combination of conditions that can ensure the safety of the community short of defendant's detention pending disposition of the case.

¶ 15    In response, defense counsel proffered that the PSA report recommended a level two pretrial release, which includes mandatory statutory conditions, court reminders before each court

date, and monthly phone check ins. Defense counsel further represented that defendant has indicated that he is willing to "work under house arrest with a curfew and electronic monitoring."

¶ 16    Regarding the allegations in this case, defense counsel argued that there were only 1,600 to 1,700 pills (not the 2,000 indicated by the informant) and that it was defendant's belief that the pills were Percocet (not fentanyl). Defense counsel further noted that the informant indicated that defendant had a pistol and an assault rifle. However, no pistol was recovered, and the alleged assault rifle was "a toy with the orange cap removed." Defense counsel stated that defendant is an avid collector and that he had the katana swords for "nonviolent purposes and no nefarious intent." Defense counsel admitted that defendant "put a screw" in his door, but only to secure it for fear of an intruder.

¶ 17    As for the *Johnson* case cited by the State, defense counsel argued that the Controlled Substances Act "was not the dispositive point in that case." Defense counsel contended that *Johnson* was factually distinguishable as the defendant in *Johnson* had a long history of violence, gun ownership, and unlawful behavior, including a sexual assault. With respect to defendant's criminal history, defense counsel asserted that defendant has not had any violent offenses, he has not been subject to a petition to revoke probation since 2009, and he has not had a failure to appear in the past two years. According to defense counsel, in the 15 years preceding the offenses at issue, defendant's most serious offense was driving with a suspended license. Defense counsel therefore requested that defendant be put on pretrial release level two as suggested in the PSA report.

¶ 18    The trial court granted the State's petition and denied defendant pretrial release. In issuing its oral ruling, the trial court stated that it considered the State's petition, the proffers and arguments presented by the parties, the information set forth in the PSA report, the nature and circumstances of the offenses, and the history and characteristics of defendant. The court first determined that the

State had met its burden to establish by clear and convincing evidence that the proof is evident or presumption great that defendant committed a detainable offense. The court stated that regardless of the actual number of fentanyl pills recovered, a significant quantity of controlled substances was involved. The court also observed that there were indicia of intent to distribute, including the recovery of a replica assault rifle and other weapons from defendant's apartment and the fact that the front door of the apartment was "barricaded."

¶ 19    Next, the court addressed whether defendant's pretrial released would pose a real and present threat to the safety of any person, persons or the community. The court stated:

"I do believe based on the evidence that was presented that the defendant does pose a clear and present danger to the community.

*** [T]he Court will take judicial notice of the fact that Fentanyl is an extremely potent and deadly drug killing people daily. And [whether] this defendant had *** 1700 or 2,000 pills containing Fentanyl [it] is extremely concerning to the Court in terms of the amount of drugs that are being distributed or attempting to be distributed.

The defendant's statement that he thought it was Percocet, I suppose, can cut both ways. On the one hand it shows potentially that he didn't know he had Fentanyl. But the other concern the Court, frankly, shares with the State is that the form that this drug was in and that it was in pill form would mean that somebody could *** unknowingly take a pill that they thought was Percocet or perhaps some other drug not knowing it's Fentanyl and overdose and die which happens routinely. So the form that the pill is in is a concern to the Court in terms of the dangerousness of this offense because people could unknowingly consume this thinking they're taking something else. And even if the Court did believe that the defendant thought this was Percocet, it's almost just as bad as knowingly distributing

Fentanyl because now you're distributing a drug thinking it's one thing and it's something completely different and completely deadly.

So for those reasons I do believe the defendant poses a real and present danger to the community."

¶ 20 Finally, the court addressed whether there are any conditions or combination of conditions that could mitigate the risk defendant's pretrial release would pose to any person, persons, or the community. The court noted that although defendant's criminal history dates to 1994, the most recent offense occurred in 2016, "so it does appear that there has been some period of time where the defendant has not been in front of the Court." Nevertheless, the court observed that just about every offense from 2016 and earlier "consists of a series of failure to appear warrants as well as petitions to revoke being filed." The court stated that this record demonstrates that defendant "does not follow court orders." The court rejected the notion that a curfew with home confinement and electronic monitoring could mitigate any risk, explaining that the instant offenses took place in defendant's home and a curfew would not prevent defendant from possessing or selling a controlled substance. Accordingly, the court concluded that there are no conditions or combination of conditions that would mitigate the risk defendant poses to the community. The court entered a written order summarizing its oral findings.

¶ 21                                      C. Motion for Relief and Notice of Appeal

¶ 22 On October 20, 2025, defendant filed a motion for relief from the order granting the State's petition to deny pretrial release. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In the motion, defendant, relying on *People v. Norris*, 2024 IL App (2d) 230338-U, argued that to use the general societal harm of drugs to show that an offender poses a real and present threat to the community is too speculative. Defendant conceded that he has a history of drug use and drug-related offenses.

He asserted, however, that that does not amount to clear and convincing evidence that he poses a real and present threat that cannot be mitigated. Defendant further asserted that pursuant to *Norris*, the court must consider whether there is evidence beyond the fact that he has been charged with a Class X drug offense. Defendant posited that the State did not present any evidence to show that he sold drugs or that the drugs he allegedly possessed caused a direct harm to an identifiable person. Defendant asserted that because possession of drugs themselves cannot constitute a real and articulable threat to a person or the community and there is no evidence that he sold these drugs to the community, "continued detention is not necessary to mitigate an unproven threat." Defendant requested that the court impose conditions of release and order him released *instanter*.

¶ 23     A hearing on defendant's motion was held on October 27, 2025. At the hearing, defense counsel, relying on *Norris*, reiterated the arguments made in defendant's written motion for relief. Defense counsel also claimed that the fentanyl found in defendant's apartment belonged to defendant's girlfriend.

¶ 24     The State allowed that, pursuant to *Norris*, the mere general allegation of possession of drugs and the possible sale of drugs, without more, does not rise to the level of societal harm sufficient for detention. The State asserted, however, that defendant's potential release presents a danger not only to society, but to his girlfriend. The State explained that during discovery it became aware of jail calls in which "defendant has made it clear that he is under the impression that [his girlfriend] acted against him in this case and made statements indicating his negative feelings towards her." The State noted, for instance, that during a call on January 24, 2025, defendant expressed his belief that his girlfriend was the confidential informant and stated, "What goes around comes around. It's going to come back to them." Further, on February 18, 2025, defendant, in reference to his girlfriend, stated, "Let them know she's a fucking rat." The State argued that

- 9 -

defendant's statements indicate that he has "negative intentions towards [his girlfriend], and even while in custody[,] he's starting to act on those intentions." The State contended that releasing defendant would put his girlfriend and society in danger and that those specific facts differentiate this case from *Norris*.

¶ 25    The trial court (Judge James K. Booras) denied the motion for relief. The court found that the State had provided sufficient evidence to rebut the presumption of defendant's release by establishing clear and convincing evidence that he posed a real and present danger "to the safety of a person in the community." The court further commented about the dangerousness of the drugs that defendant is alleged to have possessed. The court stated that "if a granule of that drug is released to someone and they take it, that is clear and present danger. They'll die. And that's what society has to be protected from."

¶ 26    On November 7, 2025, defendant filed a notice of appeal. The court appointed the Office of the State Appellate Defender (OSAD) to represent defendant. OSAD elected not to file a memorandum under Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024) (providing that the issues raised in the motion for relief are before the appellate court regardless of whether an optional memorandum is filed). Thus, on appeal, we are limited to the arguments made in defendant's motion for relief. The State filed a response in opposition to the appeal.

¶ 27                                    II. ANALYSIS

¶ 28    Article 110 of the Code, as amended by the Acts, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2024). In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2024). To detain a defendant, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great

that the defendant has committed a detainable offense (725 ILCS 5/110-6.1(e)(1) (West 2024)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2024)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2024)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight (725 ILCS 5/110-6.1(e)(3) (West 2024)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. The Code further requires that "decision[s] regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2024).

¶ 29    In this case, no live testimony was presented. The parties proceeded solely by proffer. Accordingly, our review of the trial court's factual findings and its detention orders is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Under *de novo* review, a reviewing court "perform[s] the same analysis that the trial [court] would perform using the proper standards." *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 69.

¶ 30    In his motion for relief, defendant did not challenge the trial court's finding that the State met its burden on the first proposition, *i.e.*, whether the proof was evident or the presumption great that he committed a detainable offense. Defendant did argue that the State failed to meet its burden on the second proposition, contending that the State failed to show that he posed a real and present threat to the safety of any person or persons or the community. We disagree.

¶ 31    Under the Code, factors a court may consider in making a determination of dangerousness, *i.e.*, that a defendant poses a real and present threat to any person or the community, include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense; (2) the history and characteristics of the defendant, including whether he or she has a prior criminal history indicative of violent, abusive, or assaultive behavior; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether, at the time of the current offense or any other offense, the defendant was on probation, parole, or any other form of supervised release from custody; and (9) any other factors, including those in section 110-5 of the Code (725 ILCS 5/110-5 (West 2024)), the court deems to have a reasonable bearing on the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior. 725 ILCS 5/110-6.1(g) (West 2024).

¶ 32    In this case, we conclude that the record supports a determination that defendant poses a real and present threat to the safety of a person, persons, or the community. Although the offenses at issue did not involve violence, a weapon, or a sex offense, defendant has an extensive criminal history. Further, at the hearing on defendant's motion for relief, the State identified defendant's girlfriend as an individual to whom defendant may pose a threat. Notably, the State recounted that, while in custody, it became aware of jail calls during which defendant made veiled threats to his girlfriend. Moreover, the record shows that defendant had access to weapons. When the police searched defendant's apartment, they found two katana swords, a machete, and a realistic-looking

airsoft rifle. Although defendant characterized the airsoft rifle as a "toy," the orange tip was removed from the device, thereby making it mimic an assault rifle. In its totality, we find this evidence sufficient to support a determination that the State presented clear and convincing evidence that defendant poses a real and present threat to the safety of a person, persons, or the community.

¶ 33    In his motion for relief, defendant relied on *Norris*, 2024 IL App (2d) 230338-U, for the proposition that a showing of the general societal harm of drugs to establish that an offender poses a real and present threat to the community is too speculative. In *Norris*, the defendant was indicted for several drug offenses, including unlawful possession with intent to deliver approximately 18 grams of cocaine, which was recovered from four plastic baggies. *Norris*, 2024 IL App (2d) 230338-U, ¶¶ 4, 7-8. The defendant also had an "extensive criminal history," which included drug offenses, obstructing justice, and domestic battery. *Norris*, 2024 IL App (2d) 230338-U, ¶¶ 9, 15, 35. In reversing the denial of the defendant's pretrial release, the court reasoned that there was no evidence beyond the charges themselves to suggest a threat to the community and no findings describing past offenses reflecting a real and present threat to a person or the community. *Norris*, 2024 IL App (2d) 230338-U, ¶ 41; see also *People v. Drew*, 2024 IL App (2d) 230606-U, ¶ 19 ("The plain language of section 110-6.1(e) demands more from the trial court than a general conclusion that the alleged drug offense is inherently dangerous to the community; the Code requires a finding that [a] defendant's pretrial release posed a real and present threat to the safety of the community based on the specific articulable facts of the case, such as by showing a real threat of violence or abuse to members of the community upon release."). Here, it is true that the trial court made statements regarding the general societal harm of drugs and fentanyl in particular. However, unlike in *Norris*, there was evidence beyond the charges themselves to suggest a threat

to a person or the community. Significantly, weapons were discovered in defendant's apartment, and he made threats to his girlfriend while in custody. Thus, we find this case distinguishable from *Norris*. See *People v. Raisbeck*, 2025 IL App (4th) 250518-U, ¶¶ 43-46 (distinguishing *Norris*, observing that the trial court's detention decision focused not only on the defendant's drug possession with intent to distribute, but also the defendant's possession of firearms, his significant prior criminal history, his commission of additional offenses while on probation, and other factors in section 110-6.1(g) of the Code); *People v. Singh*, 2025 IL App (4th) 250115-U, ¶¶ 35-36 (rejecting the defendant's reliance on *Norris*, noting that although the trial court relied heavily on the amount of cocaine seized, its decision was supported by multiple factors in section 110-6.1(g) of the Code); *People v. Bradford*, 2024 IL App (2d) 240414-U, ¶¶ 21-22 (distinguishing *Norris* where the trial court recognized that the defendant had two prior aggravated unlawful use of weapons convictions, was on pretrial release at the time the offense at issue was committed, and had access to weapons); *People v. Ayala-Avalos*, 2024 IL App (2d) 240355-U, ¶ 19 (distinguishing *Norris* and *Drew*, noting that the defendant continued to commit drug offenses while on pretrial release for similar offenses, the defendant's PSA report was rated 6 out of 6 on a new criminal activity scale (the worst score), and the defendant had a prior conviction of aggravated battery to a police officer); *People v. Woods*, 2024 IL App (4th) 240190, ¶ 21 (distinguishing *Norris* and *Drew* where the defendant sold more than three times the threshold amount for the offense for which he was charged and the defendant's criminal history demonstrated that, despite multiple convictions of selling drugs, he continued to do so, even while on parole for another charge). In short, we find that the State proved by clear and convincing evidence that the pretrial release of defendant would pose a real and present threat to the safety of any person, persons, or the community.

¶ 34                         III. CONCLUSION

¶ 35    For the reasons set forth above, we affirm the judgment of the circuit court of Lake County.

¶ 36    Affirmed.