NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 231011-U

NO. 4-23-1011

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 20, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Rock Island County |
| COREY D. BENFORD, | ) | No. 23CF422 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Peter W. Church, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the circuit court did not abuse its discretion in granting defendant pretrial release.

¶ 2    The State appeals the circuit court's order granting defendant, Corey D. Benford, pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023).

¶ 3        On appeal, the State argues the circuit court abused its discretion by "failing to

find defendant poses a real threat to the safety of any persons or the community, and by also

failing to find defendant has a high likelihood of willful flight to avoid prosecution." We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        On May 26, 2023, the State charged defendant with three counts by way of

information: count I alleged unlawful possession of methamphetamine with intent to deliver (720

ILCS 646/55(a)(1), (a)(2)(F) (West 2022)), a Class X felony; count II alleged possession of a

controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(A) (West 2022)), a Class X

felony; and count III alleged unlawful possession of cannabis with intent to deliver (720 ILCS

550/5(d) (West 2022)). Counts I and II carried mandatory minimum sentences of 15 and 6 years

respectively. That same day, the circuit court set defendant's bond at $500,000, requiring the

deposit of 10%. Defendant did not post bond and remained in detention.

¶ 6        On September 26, 2023, defendant filed a motion for pretrial release, calling for

the circuit court to immediately release him on the condition he appear before the court as

ordered, submit himself to the orders of the court, not violate any criminal statute, and surrender

all firearms. The following week, the State filed a verified petition to deny defendant pretrial

release under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)), as amended by the

Act. The State alleged defendant was charged with a felony offense other than a Class 4 offense,

and defendant had a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-

6.1(a)(8) (West 2022)). In support of its petition, the State provided the following factual basis:

        "On May 25th, 2023, Moline Police Departments [*sic*]

        Special Investigative Group executed warrants on Cory [*sic*]

        Benfords [*sic*] vehicle (Blue 2021 Nissan Murano) and residence

- 2 -

(1104 15th Avenue, East Moline). Detectives conducted a vehicle takedown while at 5420 27th Street, Moline on the Blue Nissan Murano where they located the driver and sole occupant Cory [*sic*] Benford. On the driver's floorboard detectives located approximately 274 grams of methamphetamine packaged into 4 separate clear plastic baggies (weights were 54.83g, 54.76g, 82.36g, 82.62g) all were Total package weight and field tested positive. Post [*Miranda v. Arizona*, 384 U.S. 436 (1966),] Benford admitted to having approximately 8 ounces of meth in the vehicle, he believed they were packaged into 2-3 ounce bags and 2-2 ounce bags he also advised he had another 3lbs of meth and a firearm (that his fingerprints would be on) at his residence 1104 15th Avenue.A second search warrant was drafted and executed at 1104 15th Avenue, East Moline. Detectives located another 1600 (little over 3 lbs) grams of meth, 20 grams of cocaine (TPW/FTP), 100 grams of cannabis (TPW, FTP), a 9mm handgun and several rounds of ammo. Total meth seized was approximately 4.15 pounds. The defendant initially claimed to have found the methamphetamine in an alley. The defendant stated he was planning on selling 10 ounces to a 'Frank.' Later, in a recorded interview, he changed his story to say he received the drugs from a man named 'Duke' who gave the methamphetamine to him for nothing because he was 'going on the run.' "

The State also provided four additional grounds upon which defendant should be denied pretrial release, including (1) defendant informed investigators he "was supposed to be leaving for Mississippi *** where he and his family are from," (2) defendant's child and the child's mother reside in Mississippi, (3) after being stopped by police and exiting the vehicle, "defendant took off running across the McDonald's parking lot through an open field until he was tackled by police," and (4) defendant faces a mandatory minimum sentence of 15 years. The State's petition alleged defendant "has insufficient ties to this community and is a flight risk."

¶ 7        On October 13, 2023, the circuit court held a detention hearing. The State orally moved to amend its petition to also allege defendant committed a qualifying offense and posed a real and present threat to the safety of any persons or the community. Noting all involved were implementing a new statute "in a relatively quick fashion" and giving "the State some latitude," the court granted the State's motion over defense counsel's objection. The State proffered what evidence would be presented which was consistent with the factual basis set forth in its verified petition. The State reiterated defendant admitted possessing various drugs (methamphetamine, cannabis, and cocaine), he admitted having a firearm, and he planned to sell the methamphetamine. The State argued:

> "[B]ecause of the very large quantities of drugs, his lack of ties to the area, the significant amount of jail time that he is facing—or *** prison time which is mandatory and the fact that he has plans and has presumably been selling these drugs throughout the Quad Cities would, in fact, make him a danger to the community as well as being a potential flight risk."

According to the State, the least restrictive alternative would be for defendant to remain in pretrial detention until trial.

¶ 8        Defense counsel proffered the pretrial services interview established defendant lived in East Moline, Illinois, at the time of the offense and had lived there since 2021. Defendant had a full-time job at John Deere before he was detained, and he had health insurance. Defendant had no prior criminal history. Counsel argued defendant's score of 5 of 14 for risk of failing to appear was attributable to the amount of time in prison defendant faced if convicted. Counsel denied defendant was a "big time drug dealer," arguing if defendant trafficked in large amounts of drugs, then he would have had the money to post bond. Since defendant was not a big time drug dealer, he was not a danger to the community. Counsel disputed the State's reference to defendant initially running from police. According to defense counsel, it was not initially apparent to defendant he was being stopped by police. The police report indicated undercover agents in unmarked cars approached defendant's vehicle from behind. Counsel noted defendant cooperated with police once he was apprehended. Counsel discounted any inference defendant would flee prosecution simply because he got the drugs from a man who was on the run. Counsel argued neither "defendant's record nor circumstances justified that he be considered a clear and present danger to any person, people, or the community in general." He likewise maintained defendant was not a flight risk.

¶ 9        On rebuttal, the State reiterated "the very, very large quantity of drugs." It argued "anybody with that quantity [of methamphetamine] and admitting to selling it is inherently a threat to the community."

¶ 10       Ultimately, the circuit court denied the State's verified petition and granted defendant's request for pretrial release. Though the court found "the State[ ] met its burden with

regard to the presumption is great that the offense was committed," it determined the State did not meet its burden as to proving dangerousness or willful flight. In doing so, the court made the following observation about the Code's requirements:

> "I think you could make a blanket statement. Anybody charged with that much methamphetamine, that's a threat to the community in the common understanding. But in the statutory framework, I don't think that's enough. I think you have to have specific facts as to why this particular Class X felony in addition to be being a very serious offense, the specific facts in this case above and beyond are the factors that lead to a finding of dangerousness or in the alternative of willful flight."

Considering the specific facts of this case, the court found the fact that defendant initially ran from police "would be a concern," but it concluded it was not clear and convincing evidence "both as to dangerousness and as to willfulness." As for the willful flight analysis, the court noted defendant scored "a 5, which is a moderate risk not to appear." However, the court explained it previously detained defendants who scored "12s, 13s, so forth[,] [r]eally high numbers." Finally, the court noted defendant had no criminal history, other than one arrest in Mississippi.

¶ 11        The circuit court then ordered defendant released with the conditions he (1) not violate any law, (2) report to the Rock Island County court services and comply with all requirements (3) refrain from possessing a firearm or other dangerous weapon, (4) refrain from using illicit drugs, (5) submit to drug testing, and (6) not leave the State of Illinois without permission from the court.

¶ 12        After the circuit court entered its written order detailing the conditions of defendant's pretrial release, the State filed its notice of appeal under Illinois Supreme Court Rule 604(h)(1)(iv) (eff. Sept. 18, 2023). This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14        The determination of whether pretrial release should be granted or denied is reviewed under an abuse-of-discretion standard. See *People v. Jones*, 2023 IL App (4th) 230837, ¶¶ 27, 30. "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the [circuit] court." (Internal quotation marks omitted.) *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9, 143 N.E.3d 833. Under this standard, a reviewing court will not substitute its own judgment for that of the circuit court simply because it would have analyzed the proper factors differently. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 15        On appeal, the State argues the circuit court abused its discretion by not finding defendant posed a real and present threat to the safety of a person or the community and not finding defendant presented a high likelihood for willful flight to avoid prosecution.

¶ 16        The Code creates a presumption "a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022). It is the State's burden "to prove by clear and convincing evidence that any condition of release is necessary." 725 ILCS 5/110-2(b) (West 2022). Here, the State sought to deny defendant pretrial release under sections 110-6.1(a)(7), (a)(8)(B) of the Code, arguing he posed a real and present threat to the community and high likelihood of willful flight respectively.

¶ 17                         A. Real and Present Threat to the Community

¶ 18          When the State alleges pretrial release should be denied on the basis the defendant presents a danger to the community, the State carries the burden of proving those allegations. 725 ILCS 5/110-2(c) (West 2022). Before denying pretrial release, the State must prove by clear and convincing evidence "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(2), (3)(i) (West 2022). Factors a circuit court may consider in determining whether a defendant poses a real and present threat include:

> "(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.
>
> (2) The history and characteristics of the defendant including:
>
>> (A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. ***
>>
>> (B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.
>
> (3) The identity of any person or persons to whose safety

the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release ***.

(9) Any other factors *** deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g) (West 2022).

¶ 19 Here, the State argues the circuit court abused its discretion by not finding defendant dangerous. It contends the court misapplied the Code by not considering the specific facts of this offense, namely "the massive amount of methamphetamine defendant was attempting to inject into the community." The State's focus on the quantity of drugs seized as its primary basis for detention does not comport with the requirements of the Code, which is heavily weighted toward release. As a result, we must find no abuse of discretion in the court's application of the Code.

¶ 20 From our review of the record, it appears the only fact the State relied upon for proving clearly and convincingly that defendant posed a real and present threat to the community was the four pounds of methamphetamine recovered during the searches of defendant's vehicle and residence. The circuit court, however, explained it did not understand the Code to allow it to consider the amount of drugs recovered as the sole reason for detention since that same factor also made possessing the drugs a detainable offense.

¶ 21 We pause to note we do not consider principles of "double enhancement" applicable to a detention hearing under the Code. The double-enhancement rule is a creature of statutory construction. *People v. Rissley*, 165 Ill. 2d 364, 390, 651 N.E.2d 133 (1995). It is a prohibition against using a single factor implicit in the offense for which a defendant has been convicted, as an aggravating factor at sentencing as well. *People v. Johnson*, 2019 IL 122956, ¶ 38, 129 N.E.3d 1239. The rule rests "on the assumption that, in designating the appropriate *range of punishment* for a criminal offense, the legislature necessarily considered the factors inherent in the offense." (Emphasis added.) *People v. Phelps*, 211 Ill. 2d 1, 12, 809 N.E.2d 1214, 1220 (2004). As such, double enhancement applies at the sentencing stage. Here, however, since we find the State's reliance solely on the quantity of drugs seized undermined its argument for detention, the circuit court's misapplication of the double-enhancement rule is irrelevant. The court properly believed more specific articulable facts of a defendant's dangerousness beyond those facts which make an offense inherently dangerous and, therefore, detainable under sections 110-6.1(a)(1), (7) of the Code, are required in these determinations. A plain reading of section 110-6.1(a)(7) proves this. Even if the offense is one for which pretrial release may be denied because it carries a mandatory prison sentence, the State must still allege, based on "the specific articulable facts of the case" and proven by "clear and convincing evidence," that "defendant's

pretrial release poses a real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(a)(7) (West 2022). The Code, however, is weighted so heavily against detention and in favor of pretrial release that in spite of clear and convincing evidence of all the above, the State must still show "no condition or combination of conditions" "can mitigate (i) the real and present threat to the safety of any person or persons or the community" or "(ii) the defendant's willful flight," based on the "specific articulable facts of the case." 725 ILCS 5/110-6.1(e)(3) (West 2022). Although the court incorrectly applied "double enhancement" to its evaluation, it ultimately complied with the Code. Section 110-6.1(g) instructs the court to consider "the specific articulable facts of the case" and provides nine factors the court can also consider when assessing the real and present threat allegation, including the "nature and circumstances of any offense charged." 725 ILCS 5/110-6.1(g) (West 2022). The Code provides "no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022). The court determined there must be more than the offense itself to detain defendant, which is not unreasonable given the Code's requirements.

¶ 22        Per the Code, the circuit court first determined defendant's offense was detainable and then, second, the State "met its burden with regard to the presumption is great that the offense was committed." See 725 ILCS 5/110-6.1(e)(1) (West 2022). Turning to the dangerousness analysis, the court found the State did not present clear and convincing evidence. It determined the specific, articulable fact that defendant initially fled from police did not establish dangerousness. The court went on to consider defendant's history and characteristics, noting defendant had no criminal history. In phrasing the issue as an interpretation of section 110-6.1(g), whether the court could consider the amount of methamphetamine seized when evaluating the real and present threat to the community, the State attempted to dress up a request

to reweigh the evidence as a legal question. The Code allows the court to consider the specific, articulable facts of the case and the nature and circumstances of any offense. 725 ILCS 5/110-6.1(g)(1), (2) (West 2022). The court did that here, yet it still concluded the State did not meet its burden by clearly and convincingly establishing that defendant posed a real and present threat to the community. "[W]e are not reviewing the State's evidence anew. Instead, we are reviewing the circuit court's evaluation of that evidence for an abuse of discretion." *Inman*, 2023 IL App (4th) 230864, ¶ 11, The circuit court made a record, properly considered the necessary factors, and concluded the State could not rely almost entirely on the quantity of drugs alone as sufficient evidence of dangerousness. Unfortunately, in spite of a number of other relevant facts available to the State, it elected to rely primarily on the quantity of drugs. Considering our standard of review, we cannot say the court's conclusion was arbitrary, fanciful, or unreasonable; accordingly, the court did not abuse its discretion. *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 23                                B. Willful Flight

¶ 24        The State's petition also alleged defendant should be detained since he had been charged with a Class X felony and presented "a high likelihood of willful flight to avoid prosecution." On appeal, the State maintains the circuit court erred in failing to detain defendant based on his likelihood for willful flight. As with dangerousness, the State essentially asks this court to assess the situation anew and substitute our judgment for the circuit court's judgment—which we cannot do. *Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 25        The Code defines "willful flight" as "intentional conduct with a purpose to thwart the judicial process to avoid prosecution." 725 ILCS 5/110-1(f) (West 2022). The State alleged defendant posed a high likelihood for willful flight since he initially fled from police, his child and child's mother lived in Mississippi, he said he had planned to go to Mississippi, he said he

received the drugs from a man "going on the run," he faced a 15-year mandatory minimum sentence, and he lacked ties to the community. The defense rebutted the State's arguments by noting defendant initially fled from undercover agents in unmarked cars and he had a full-time job and full-time residence in East Moline when he was arrested. Defense counsel noted defendant scored a 5 out of 14 for risk of failing to appear. Counsel urged the circuit court not to infer defendant would flee simply because he received the drugs from a man "going on the run."

¶ 26      The circuit court heard both sides and considered the Code's definition of "willful flight." The court specifically noted defendant's score of 5 (a moderate risk not to appear) on the Virginia Assessment and explained it had previously detained defendants who scored "[r]eally high numbers" like "12s, 13s, [and] so forth." The court concluded the State did not clearly and convincingly show defendant had a high likelihood of willful flight. Since the court followed the Code's instructions, and since there was support for court's conclusion, this decision is not fanciful, arbitrary, nor unreasonable. *Simmons*, 2019 IL App (1st) 191253, ¶ 9. We find no abuse of discretion in the court's willful-flight determination.

¶ 27      Accordingly, under these circumstances, we cannot find the circuit court abused its discretion when it denied the State's verified petition and granted defendant pretrial release. See *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 28                           III. CONCLUSION

¶ 29      For all these reasons, we affirm the circuit court's judgment.

¶ 30      Affirmed.