NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250115-U

NO. 4-25-0115

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 1, 2025
Carla Bender
4ᵗʰ District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henry County |
| MANPREET SINGH, | ) | No. 24CF349 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James J. Cosby, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Lannerd and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed defendant's pretrial detention, as it was not against the manifest weight of the evidence for the trial court to find that defendant committed a detainable offense, poses a real and present threat to the safety of the community, and no condition or combination of conditions could mitigate that threat.

¶ 2    Defendant, Manpreet Singh, appeals an order denying a motion for relief after the trial court granted the State's petition to deny him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4    On November 29, 2024, Illinois State Police officer Daniel Davis pulled over a semitruck with an attached trailer traveling east on Interstate 80 in Henry County, Illinois, after

observing both the driver and passenger exhibit signs of fear in the presence of law enforcement when passing Davis's location in the center median. Vanshpreet Singh was in the driver's seat, while defendant was in the passenger seat. In his field report, Davis stated that after the truck pulled over and he approached, he observed both Vanshpreet and defendant exhibiting behavior indicative of stress in that Vanshpreet displayed heavy breathing and shaking hands and arms and defendant displayed an elevated heart rate. Both men provided driver's licenses from Ontario, Canada, where they were permanent residents. Both were originally from India.

¶ 5        Davis then conducted a motor carrier safety inspection of the truck's and trailer's lights, signals, horns, emergency lights, and brake lights. After doing so, Davis requested that Vanshpreet accompany him to his squad car to complete the inspection. Vanshpreet told Davis that the bolt seal on the trailer was placed there by the company for which he worked. He said that he and defendant were hauling oranges from Fresno, California, to Niagara Falls, Canada. (Davis's report indicated it was Niagara Falls, British Columbia; however, the trial court later clarified that they were traveling to Ontario, not British Columbia.) Davis continued to observe Vanshpreet's elevated heart rate and shaking hands. When Davis inspected the bill of lading, he found that the number on the trailer's bolt seal did not match the bolt seal number on the bill of lading. When Davis asked Vanshpreet again about who placed the bolt seal on the trailer, he said that defendant placed the seal on the trailer after loading it, while Vanshpreet was asleep.

¶ 6        Another officer, Lieutenant Sean Veryzer, arrived to assist Davis. He requested that defendant accompany him to his squad car. As Veryzer informed Davis of this, defendant spoke to Vanshpreet in another language. When asked, Vanshpreet told Davis that defendant told Vanshpreet to say that they started driving on November 25. Veryzer later told Davis that defendant said he was not driving when they received the load of oranges and that Vanshpreet

sealed the load with the bolt seal.

¶ 7    Davis's canine partner conducted a free air sniff of the tractor and trailer. The dog provided a positive alert for the odor of narcotics. Davis informed Vanshpreet of the positive alert and said that he would be conducting a probable cause search. Vanshpreet denied that there was anything illegal in the truck. When Davis and Veryzer searched the trailer, they found several black trash bags between boxes of oranges, which contained several kilo brick-shaped packages. They observed no evidence of damage to the boxes of oranges on the right side of the trailer; however, the boxes on the left side were crushed and looked as if someone had crawled on top of them after they were placed in the trailer. The officers subsequently handcuffed Vanshpreet and defendant. After the semitruck was relocated to a nearby gas station in Geneseo, Illinois, a thorough search uncovered 520 kilo brick-shaped packages, totaling 520,000 grams, in the trailer. A field test on one of these kilo bricks was positive for cocaine.

¶ 8    On December 2, 2024, the State charged defendant with controlled substance trafficking, a Class X felony (720 ILCS 570/401.1(a) (West 2022)), possession with intent to deliver a controlled substance, a Class X felony (720 ILCS 570/401(a)(2)(D) (West 2022)), and unlawful possession of a controlled substance, a Class 1 felony (720 ILCS 570/402(a)(2)(D) (West 2022)) for possessing more than 900 grams of a substance containing cocaine. The same day, the State filed a petition to deny defendant pretrial release based on both his dangerousness and a high likelihood of willful flight. Defendant waived the normal 48-hour time frame for a hearing on the petition.

¶ 9    The trial court held a hearing on the State's petition on December 9, 2024. In addition to the petition and pretrial bond report, the State proffered that the total amount of the cocaine seized from the trailer had a street value of approximately $50 million. Defendant

indicated he would be presenting testimony in opposition to the State's request for pretrial detention.

¶ 10　　　　Defendant first called Kami Branom, the county's pretrial services director. Branom testified that her pretrial investigation report assessment rendered defendant a "Level 2" risk, based on 3 points for the felony charges against him. She stated that if defendant were released and resided in Ohio, she would be able to supervise him, including via electronic home monitoring, if ordered by the trial court. She would require monthly contact, either virtually or in person, and could conduct regular drug testing if ordered by the court. She added that if defendant were released with an electronic home monitoring device in Ohio, she would ask "that part of the order would indicate that if there was a malfunction with the GPS, that he be ordered to return to get that device swapped." Finally, she testified that she could also supervise defendant if he were ordered to stay in Henry County.

¶ 11　　　　Defendant then called his wife, Sapna Singh, to testify. She testified that she had been married to defendant for 10 years and currently lives in Ohio. She was employed as an immigration consultant. She explained that she arranged to live in Ohio with defendant's brother's family. If defendant were released, he could also reside there with his brother, who could drive him to Illinois to attend his court dates. She added that she alternatively arranged to live in Henry County at a motel and could rent an apartment if defendant were ordered to stay in Illinois. She stated that police never returned defendant's passport to him, but defendant would release the passport to the trial court if asked.

¶ 12　　　　Defendant next called his brother, Lapreet Singh, to testify. Lapreet confirmed he lived in Ohio and defendant could reside with him if released. He stated that he could help defendant obtain a job and confirmed that he was an owner and operator of his own truck. On

cross-examination by the State, Lapreet testified that he could find defendant a job at a restaurant or with his trucking company. Defendant lastly proffered a picture of Lapreet's house in Ohio.

¶ 13    The trial court proceeded to the parties' arguments; however, during defense counsel's argument, the State objected that none of the facts referenced were presented during the evidentiary period. Consequently, the court reopened the evidence. Defendant moved to admit pages six, seven, and eight of the police report; the State did not object, as that was "the entirety of the factual basis." The contents of these pages of the police report are summarized above.

¶ 14    The State argued that it satisfied all three prongs of both the willful flight and dangerousness standards. The State contended that defendant posed a real and present threat to the safety of the community "due to cocaine being inherently dangerous, for not only the defendant, but the public itself." Defendant objected, citing case law stating that the charged offense itself cannot satisfy the dangerousness standard. The trial court expressed its belief that this argument "flat out flies in the face of the statute." The State explained that it "noted 520,000 grams of cocaine, which is an emphasis on the amount of cocaine, which is specific and articulable to this case." The court overruled defendant's objection to this remark, stating, "[L]et me make it clear what I'll be basing my ruling on, which is the threat of 520 kilos or 520,000 grams of cocaine, and criminal activity of that nature to the safety of any person or the community." The State finally contended that electronic home monitoring or home confinement would not mitigate the risk, as (1) defendant's brother intended to hire defendant to work for his trucking company in Ohio, (2) home confinement would not mitigate any risk of drugs or drug delivering if drugs were in the home, and (3) defendant posed a flight risk due to his residence in Ontario or Ohio.

¶ 15    When defense counsel began his argument, the trial court interrupted and stated that it was "going to shorten things here" because it was "not going to find a willful flight has been

proven by the State." Counsel then went on to argue that defendant was only a passenger in the truck cab and denied knowing there was cocaine in the trailer.

¶ 16    The trial court stated that it considered the exhibits presented by defendant and "the possibility of suppressible evidence." The court then found that defendant was charged with a detainable offense and, though the question of whether he committed the offense was "a little bit tricky" because he was a passenger in the vehicle, there was evidence that defendant participated in this activity and at least potentially placed the bolt seal on the trailer. The court next found that defendant presented a real and present threat to the community "based upon the sheer quantity of what was being trafficked here." The court commented that it "sometimes likes to draw a distinction between mules and people who are involved in the trade" but was "unable to do so here." Lastly, the court found that electronic monitoring, travel restrictions, or home confinement would not mitigate the threat of potential drug trafficking.

¶ 17    On January 3, 2025, defendant filed a "Motion to Reconsider," stating that the trial court's findings of fact at the hearing on the State's detention petition were inconsistent with the testimony and case law. Defendant filed a memorandum in support of that motion on January 13, 2025. Defendant argued therein that the case law established that a dangerousness decision could not be based only on the sheer amount of drugs possessed and that no other evidence was presented that defendant was a danger for purposes of pretrial detention. Although defendant noticed the hearing on the motion for January 14, 2025, the docket reflected that the hearing was not noticed correctly. Defendant then filed another "Motion to Reconsider Order of Detention" and supporting memorandum on January 30, 2025. The second memorandum, while differing slightly in format and content from the first, essentially made the same argument.

¶ 18    The trial court held a hearing on defendant's motion on January 31, 2025. As a

threshold issue, the court noted that the motion was titled "Motion to Reconsider" but referenced Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). The court asked whether defendant was asking the court to characterize this motion as a motion for relief under that rule, and defendant confirmed that he was. Defense counsel argued that (1) new evidence—namely, that Vanshpreet gave three different statements about who placed the bolt seal on the trailer—went toward the strength of the evidence that defendant committed the current offense; (2) dangerousness cannot be found based solely on the amount of drugs involved in the offense; and (3) conditions of release could mitigate any potential danger, as defendant had no prior criminal history and provided the court with several character letters.

¶ 19        The trial court denied defendant's motion for relief and reaffirmed its prior findings on all three prongs required to detain defendant pretrial. Regarding defendant's dangerousness, the court noted that the nature and circumstances of the crime involved 520 kilos of cocaine—"an extraordinar[il]y large amount of cocaine." The court stated that "that cocaine is going to be delivered somewhere," "resulting in an incomprehensible amount of crime, victims of addiction, and all the ills that go along with illegal drug distribution, illegal drug use, and drug addiction." The court further noted that it was not required to specifically name any people to whom defendant posed a threat, but that the "list is probably somewhat *** unimaginable." The court acknowledged that defendant had no criminal history and "almost all the remaining factors of 725 ILCS 5/110-6.1(g) are in his favor," but "that doesn't overcome what I've already found in [the nature and circumstances] and [identity of any persons threatened factors]." The court also stated:

> "[T]here's no evidence to support this, so I'm not going to base my findings on this, but I still want to mention it for the record is, again, it's this Court's belief that trafficking organizations do not trust controlled substances in this quantity or value

to persons they just met or do not know. And that I've never seen a one-time

trafficker, or what I believe to be a one-time trafficker, come through this county

with this amount of controlled substances."

Lastly, the court noted that, based on the amount of drugs and the court's belief that defendant was

not "just tangentially involved in drug trafficking," placing defendant on home confinement would

not mitigate defendant's dangerousness.

¶ 20    This appeal followed.

¶ 21                                II. ANALYSIS

¶ 22    On appeal, defendant challenges the trial court's findings on all three prongs

required for pretrial detention under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West

2022)). Under this section, "defendants shall be presumed eligible for pretrial release." 725 ILCS

5/110-6.1(e) (West 2022). Once the State files a petition to deny pretrial release, the court must

hold a hearing. 725 ILCS 5/110-6.1(a) (West 2022). At the hearing, the State must prove by clear

and convincing evidence that (1) the proof is evident or presumption great that the defendant

committed a detainable offense; (2) the defendant poses a real and present threat to the safety of

any person, persons, or the community, based on the specific, articulable facts of the case; and

(3) no condition or combination of conditions can mitigate the real and present threat to the safety

of any person or the community, based on the specific facts of the case. 725 ILCS

5/110-6.1(e)(1)-(3) (West 2022).

¶ 23    Before a defendant may appeal a trial court's initial detention decision under

section 110-6.1(e), he must file a motion for relief "requesting the same relief to be sought on

appeal and the grounds for such relief." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). While

defendant here filed a "Motion to Reconsider," the motion itself cited Rule 604(h)(2) and the court

construed it as a motion for relief.

¶ 24 There are two possible standards of review for pretrial detention decisions. "[W]hen the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *People v. Morgan*, 2025 IL 130626, ¶ 54. However, "when live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence." *Morgan*, 2025 IL 130626, ¶ 54. Defendant contends that we should apply the *de novo* standard of review. The State does not address which standard of review is proper in this case. At the initial hearing on the State's detention petition, defendant presented the live testimony of three witnesses: the pretrial services director who prepared the pretrial investigation report, defendant's wife, and defendant's brother. Because defendant provided live testimony, *Morgan* compels manifest-weight review. "A factual finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted). *Morgan*, 2025 IL 130626, ¶ 21.

¶ 25 A. Detainable Offense

¶ 26 Defendant first challenges the trial court's finding that the proof was evident or presumption great that he committed a detainable offense. He argues that the State did not prove by clear and convincing evidence that he knew there was cocaine in the trailer, as he claimed not to have placed the bolt seal on the trailer and did not show the same signs of nervousness as Vanshpreet.

- 9 -

¶ 27    The trial court's finding that the proof was evident or presumption great that defendant committed the charged offenses was not against the manifest weight of the evidence. The court was not required to find otherwise merely because defendant claimed innocence. Several facts support the court's finding. Defendant was the codriver of the vehicle in which the drugs were found. Vanshpreet claimed defendant placed the bolt seal on the trailer, even though this statement contradicted his previous claim that the company had placed the bolt seal. Boxes of oranges in the trailer were crushed, as if someone had crawled on top of them to place the cocaine behind them after they had been loaded into the trailer. Before pulling the trailer over, Davis observed defendant, upon seeing Davis's squad car, "sit up from [his] position in a rigid manner, turn[ ] and stare[ ] directly at [Davis] with [his] eyes wide open." While defendant was providing Davis with his driver's license and paperwork, Davis observed defendant's "elevated heart [rate] in his stomach, in an uncontrollable manner." Defendant then spoke to Vanshpreet in a different language while Vanshpreet was in Davis's squad car, which Davis believed was suspicious. Based on this evidence, the court's finding that the proof was evident or presumption great that defendant participated in the drug trafficking was not unreasonable.

¶ 28                    B. Real and Present Threat

¶ 29    Defendant next contends that the trial court erred in basing its dangerousness finding only on the quantity of drugs seized. We disagree. When assessing dangerousness, the court may consider, *inter alia*, (1) the nature and circumstances of the charged offense, (2) the history and characteristics of the defendant, (3) the identity of the person whose safety the defendant threatens, (4) any statements made by the defendant, (5) the defendant's age and physical condition, (6) the age and physical condition of any victim, (7) the defendant's possession of or access to weapons, (8) whether the defendant was on probation or other similar condition at

the time of the current offense, and (9) any additional factors bearing on the defendant's "propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g) (West 2022). However, "no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022). The court must weigh these considerations in light of—and ultimately base its finding on—"the specific articulable facts of the case." 725 ILCS 5/110-6.1(h)(1) (West 2022).

¶ 30 The Illinois legislature has established that defendants are presumptively entitled to pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). Under this framework, "the fact that a person is charged with a detainable offense is not enough to order detention." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18. This court, however, has previously stated:

> "Ultimately, the evidence of a defendant's charged conduct, even if it took place on a single occasion, may reflect such a departure from the basic expectations of civil society that it becomes difficult to predict the defendant's compliance with court orders—or even societal norms regarding the safety of others—if the defendant is placed on pretrial release. The presumption in favor of pretrial release under the [Pretrial Fairness] Act does not obligate a trial court to release such a defendant in the hopes that his otherwise spotless record will negate the real and present threat he poses to the safety of the community as shown by the State's evidence." *People v. Romine*, 2024 IL App (4th) 240321, ¶ 20.

¶ 31 In this case, the trial court heavily weighed the quantity of drugs seized as part of assessing the nature and circumstances of the crime (725 ILCS 5/110-6.1(g)(1) (West 2022)) and the identity of the people to whom defendant poses a threat (725 ILCS 5/110-6.1(g)(3) (West 2022)) in finding that defendant posed a real and present threat to the safety of the community.

The record shows that the court did not use any factor exclusively to order detention. Rather, the court considered all the applicable statutory factors, including the ones that weighed in defendant's favor. The court ultimately gave more weight to certain factors than others, given the massive amount of cocaine at issue. We cannot say this was against the manifest weight of the evidence.

¶ 32　　　　The Illinois legislature has made it clear that it recognizes the danger to society posed by large-scale drug trafficking. In the preamble to the Controlled Substances Act, the legislature "recogniz[ed] the rising incidence in the misuse of drugs and other dangerous substances and its resultant damage to the peace, health, and welfare of the citizens of Illinois," and it explicitly expressed its intent to "penalize most heavily the illicit traffickers or profiteers of controlled substances, who propagate and perpetuate the misuse of such substances with reckless disregard for its consumptive consequences upon every element of society." 720 ILCS 570/100 (West 2022). The legislature also acknowledged that "[i]t is not the intent of the General Assembly to treat the unlawful user or occasional petty distributor of controlled substances with the same severity as the large-scale, unlawful purveyors and traffickers of controlled substances." 720 ILCS 570/100 (West 2022).

¶ 33　　　　As part of this statutory scheme, the legislature categorized and penalized offenses based on the weight of narcotics at issue. Defendant in this case was charged with trafficking, possessing, and possessing with intent to distribute more than 900 grams of cocaine, which is the highest category. Nine hundred grams of cocaine implicates extremely harsh penalties—10 to 50 years for possession (720 ILCS 570/402(a)(2)(D) (West 2022)), 15 to 60 years for possession with intent to distribute (720 ILCS 570/401(a)(2)(D) (West 2022)), and 30 to 120 years for trafficking (720 ILCS 570/401.1(b) (West 2022)). The severity of these penalties reflects the legislature's view that large-scale traffickers pose a serious threat to the community.

¶ 34　　　　While the charges inherently alleged that defendant possessed and trafficked a quantity of cocaine that implicated the highest category under the Controlled Substances Act, the trial court looked beyond the charging instrument to the specific, articulable facts of the case and considered that defendant possessed and trafficked 520,000 grams of cocaine, amounting to a street value of $50 million. Although defendant has no criminal history, the court reasonably determined that the amount of cocaine at issue was massive and, thus, constituted "such a departure from the basic expectations of civil society that it becomes difficult to predict the defendant's compliance with court orders—or even societal norms regarding the safety of others—if the defendant is placed on pretrial release." *Romine*, 2024 IL App (4th) 240321, ¶ 20. This quantity of narcotics was relevant to the court's consideration of multiple statutory factors pertaining to dangerousness, including the nature and circumstances of the offense and the nature of the threat and the identity of the persons whose safety defendant threatens. See *Romine*, 2024 IL App (4th) 240321, ¶ 19 ("[T]he evidence the court uses to determine the nature and circumstances of the offense may also shed light on the other statutory factors governing dangerousness and conditions of release.").

¶ 35　　　　Defendant cites three unpublished cases in support of his argument that the amount of cocaine, alone, cannot prove that he poses a real and present safety threat. See *People v. Drew*, 2024 IL App (2d) 230606-U; *People v. Norris*, 2024 IL App (2d) 230338-U; *People v. Benford*, 2023 IL App (4th) 231011-U. None of these cases are persuasive here. Specifically, *Benford* affirmed the grant of a detention petition under an abuse-of-discretion standard, which presents both a different procedural posture and a more deferential standard of review than that present in this case. *Benford*, 2023 IL App (4th) 231011-U, ¶ 14. Moreover, as discussed above, though it is true that the trial court relied heavily on the amount of cocaine seized, this detention decision is supported by multiple factors listed in section 110-6.1(g), Further, the amount of drugs found in

- 13 -

*Benford*, *Drew*, and *Norris* was minimal compared to the amount recovered here. In *Benford*, the defendant possessed 4.15 pounds of methamphetamine, 20 grams of cocaine, and 100 grams of cannabis. *Benford*, 2023 IL App (4th) 231011-U, ¶ 6. The defendant in *Drew* possessed 17.1 grams of cocaine (*Drew*, 2024 IL App (2d) 230606-U, ¶ 6), and the defendant in *Norris* possessed 18 grams of cocaine (*Norris*, 2024 IL App (2d) 230338-U, ¶ 8).

¶ 36     In this case, defendant possessed 520,000 grams of cocaine—276 times more than the amount of methamphetamine and *26,000 times more* than the amount of cocaine possessed by the defendant in *Benford*. The defendant in *Benford* also was not an alleged drug trafficker, which the legislature has seen fit to punish much more severely than someone who merely possesses drugs. The trial court was not required to find that defendant's lack of criminal history and low score on the Virginia Pretrial Risk Assessment Instrument-Revised outweighed the substantial amount of cocaine at issue, which arguably poses a much greater risk to the community than the amounts at issue in *Benford*, *Drew*, or *Norris*. The legislature explicitly recognized the difference between "the unlawful user or occasional petty distributor of controlled substances" and "the large-scale, unlawful purveyors and traffickers of controlled substances," and it emphasized that the latter group, of which defendant is alleged to be a part, is more dangerous and should be treated with more severity. 720 ILCS 570/100 (West 2022). The trial court's finding that defendant was dangerous was therefore not unreasonable.

¶ 37                    C. Conditions of Release

¶ 38     Defendant next argues that the trial court erred in finding that there was no condition or combination of conditions that could mitigate the threat that he poses to the community. He contends that GPS monitoring and house arrest would mitigate any purported threat.

¶ 39        The trial court may consider many factors in determining whether there are conditions that can mitigate a defendant's dangerousness, including (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the defendant"; (3) "the history and characteristics of the defendant," including "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, history criminal history [*sic*], and record concerning appearance at court proceedings"; (4) "the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case"; and (5) "the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release, if applicable." 725 ILCS 5/110-5(a)(1)-(5) (West 2022). In each case, a court must conduct an "individualized" assessment of the propriety of detaining the defendant versus releasing him or her with conditions. 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 40        In this case, several factors weigh against the possibility that conditions of release could mitigate the threat posed by defendant to the community. As the trial court emphasized and as discussed above, 520 kilograms of cocaine is an exorbitant amount of cocaine and could pose a threat to a great many individuals in both the United States and Canada, where the shipment was being transported. 725 ILCS 5/110-5(a)(1), (4) (West 2022). If defendant were to be released to Ohio, his brother stated he would be able to provide him employment in his trucking business, which is the same business that enabled defendant to transport large quantities of narcotics and would furthermore create challenges for GPS monitoring and home confinement. 725 ILCS 5/110-5(a)(3)(A) (West 2022). It would thus be difficult to prevent defendant from engaging in drug trafficking again. Moreover, defendant has no ties to Illinois or Ohio, other than his brother's

residence there; rather, he is a permanent resident of Canada and citizen of India. 725 ILCS 5/110-5(a)(3)(A) (West 2022). Defendant's lack of community ties also tends to show that defendant may attempt to obstruct the criminal process by fleeing to Canada or India. 725 ILCS 5/110-5(a)(5) (West 2022); see also 720 ILCS 5/31-4(a)(3) (West 2022) ("A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he or she knowingly *** [p]ossess[es] knowledge material to the subject at issue [and] *** leaves the State or conceals himself."). Again, as it relates to compliance with conditions of release, we reiterate that defendant's involvement in trafficking 520,000 grams of cocaine constitutes "such a departure from the basic expectations of civil society that it becomes difficult to predict the defendant's compliance with court orders." *Romine*, 2024 IL App (4th) 240321, ¶ 20.

¶ 41    All these factors, taken together, support the trial court's finding that no condition or combination of conditions can mitigate the real and present threat posed by defendant to the community. The court's finding was thus not against the manifest weight of the evidence.

¶ 42                      III. CONCLUSION

¶ 43    For the reasons stated, we affirm the trial court's judgment.

¶ 44    Affirmed.