NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 250518-U

NO. 4-25-0518

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 28, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Stephenson County |
| RICKIE J. RAISBECK, | ) | No. 25CF72 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Glenn R. Schorsch, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Steigmann and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The State proved that defendant should be detained pending trial, and the circuit court's finding that defendant's continued detention was necessary was not against the manifest weight of the evidence.

¶ 2    Defendant Rickie J. Raisbeck appeals from the circuit court's order denying his request for pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 *et seq.* (West 2024)). On appeal, defendant contends that the court erred in finding there were articulable facts showing that he posed a real or present threat to the safety of any person or the community. He also argues that the court failed to consider conditions that could mitigate any threat he posed.

¶ 3    We affirm.

¶ 4                                I. BACKGROUND

¶ 5    On March 10, 2025, defendant was charged by complaint with possession of 15 to

100 grams of methamphetamine with the intent to deliver (720 ILCS 646/55(a)(2)(C) (West 2024)), unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2024)), and possession of 30 to 500 grams of cannabis with the intent to deliver (720 ILCS 550/5(d) (West 2024)). Defendant was subsequently arrested on a warrant. On March 13, the State filed an information, making the same assertions made in the complaint.

¶ 6                                    A. Initial Pretrial Detention Hearing

¶ 7                                    1. *Petition to Detain*

¶ 8          On March 10, 2025, the State filed a verified petition to detain under section 110-6.1, and a hearing was held the next day. 725 ILCS 5/110-6.1 (West 2024). At the hearing, the State began by noting that defendant had been "convicted of home invasion in Carroll County on April 18th of 2001," which was a "Class X felony for which the defendant was sentenced to 12 years in the Department of Corrections."

¶ 9          The State went on:

"On March 7th, 2025, at approximately 2:32 p.m., Detective Holden obtained a search warrant for the person of the defendant and the residence *** in Freeport. At 4:25 p.m. on that date, that detective was conducting surveillance of that residence when he observed multiple subjects leave the home and enter a beige 2006 Chrysler 300.

A traffic stop was made on that vehicle. The defendant was located inside. He was found to have two [b]aggies of suspected cannabis on his person and a cellular phone.

After the defendant was detained at that point, Detective Moore and Detective Holden cleared the residence *** and confirmed that there were no other

- 2 -

subjects inside. The search of the home yielded the following items of evidence: One white and black BERSA Thunder .380-caliber handgun with a certain serial number. And that was located on the northeasternmost second-story bedroom."

¶ 10        According to the State, "The handgun was located between the bedroom's mattress and headboard on the east side of the bed. The handgun was easily accessible to the subjects sleeping on the easternmost side of the bed. The magazine was loaded."

¶ 11        The State further proffered that,

"Also located in that room was a letter addressed to the defendant at [his residence] and a camouflage Under Armour brand bag on a shelf in the room's closet. There was a clear [b]aggie inside the Under Armour bag containing approximately 56.8 grams, without packaging, of a substance testing positive for methamphetamine. A field test was done using a NARK Brand Sirchie field test which alerted positive for the probable presence of methamphetamine.

There were multiple clear bags in the Under Armour bag. Based on the amount of the methamphetamine located, along with packaging material, it was Detective Holden's opinion that the methamphetamine was possessed with the intent to deliver.

There were also located four clear plastic [b]aggies—clear [b]aggies containing cannabis: One contained approximately 23.9 grams without packaging; a second one, 21.1 grams without packaging; a third, 26.6 grams without packaging; a fourth, 27.2 grams without packaging; the total weight being 98.8 grams without packaging. A fragment of the cannabis from each [b]aggie was tested, and all tested positive for the probable presence of cannabis.

Additionally, there [were] 2.3 more grams of methamphetamine without packaging located in a clear bag that was located on a plastic tray near a bubble meth pipe, a $5.00 bill with residue on it and a credit card.

The plastic tray and its contents were located in the closet near the Under Armour bag. A fragment of that methamphetamine was tested and tested positive for the probable presence of methamphetamine.

There was also a dinner plate with methamphetamine residue and two plastic credit cards located in the same closet as the cannabis and methamphetamine."

The search of the premises also produced "a functioning digital scale with white residue located on it in the basement."

¶ 12　　　　The State proffered that, after being read his rights, defendant "admitted that the handgun was his and that he used it for protection due to a male who's been threatening him." He further told police that he slept on the right side of the bed, "which is the side of the bed the gun was located on. He claimed he didn't leave the home with the gun."

¶ 13　　　　The State's proffer stated further that,

"[Defendant] indicated the cannabis was his, and he only smokes it. He claimed that he purchased cannabis in quarter-pound amounts, but it was only for personal use. The detective informed the defendant that they located approximately 60 grams of methamphetamine. He eventually advised that he was holding it for someone who he claimed was named Zaylo (phonetic). He claimed that he doesn't sell methamphetamine. He was asked about the smaller bags of methamphetamine located in his home, and he said that he did use methamphetamine."

- 4 -

¶ 14    The State tendered the pretrial investigation report, which indicated a number of prior charges and convictions and further indicated a Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R) score of 11 out of 14; defendant's score places him at a "Level 6," the highest risk level. Defendant had received sentences of probation on three of his prior convictions—two for domestic battery (720 ILCS 5/12-6.3(a) (West 2014)) and one for aggravated assault (720 ILCS 5/12-2(a) (West 2010))—and his probation on each was terminated as "Unsatisfied." Defendant also had a conviction for driving while his license was suspended in 2017, for which he was given one year of court supervision; while on supervision, he committed the offense of resisting arrest, a Class A misdemeanor (2017). He also violated his release on bond in another matter in 2022, for which he received 24 months of probation. In 2023, he was sentenced to conditional discharge on a charge of reckless driving (which occurred while he was on supervision for a criminal damage to property conviction earlier in 2023); a petition to revoke his conditional discharge was pending. Defendant also had three incidents of failing to appear pretrial and two incidents of failing to appear posttrial.

¶ 15    Defendant made no proffer. No testimony was presented at the detention hearing.

¶ 16                    2. *The Court's Detention Order*

¶ 17    After noting that it had considered the evidence, proffers, and the various factors set forth in the statute, the circuit court announced its ruling. In addressing "the real and present threat to the physical safety of the victim or safety of any person, persons or the community based on the specific, articulable facts of the case," the court found significant the fact that defendant possessed a handgun and that he appeared to be dealing drugs. Concerning the firearm found at defendant's residence, the court commented:

            "What is concerning in this case, in addition to the amount of

methamphetamine that was found with a scale in the residence and multiple clear bags, is that there was a loaded handgun that was found. \*\*\*

The defendant, in being questioned by the detectives, \*\*\* said he was keeping that gun for his personal protection. I don't want to go too far off on this. But if someone is holding product for someone else and that product is seized, there's going to be somebody unhappy."

¶ 18 Finally, concerning whether any conditions or combination of conditions could mitigate the threat, the circuit court stated:

"And looking at the condition or combination of conditions in this case, [defense counsel] correctly argued that all of this contraband was found in the residence where [defendant] was deemed to be the sole occupant. Placing him on home confinement would in no way mitigate the situation because that is where the criminal activity was allegedly taking place. [Defendant] has a history of having probated sentences being terminated unsatisfied. He has a pending case and misdemeanor at this time.

I have tried to fashion a combination of conditions to allow for his release that would not continue to pose a threat to any person, persons or the community, and I am unable to do so at this time based on the totality of the facts that were presented at the detention hearing."

¶ 19 The circuit court's written order, entered the same day, stated that defendant "possessed a loaded handgun and a dealer amount of [methamphetamine]," and it specifically adopted this court's holding in *People v. Woods*, 2024 IL App (4th) 240190, ¶ 20, that "selling large amounts of drugs may equate to danger to the community." It further noted that defendant

had been "previously convicted of Home Invasion" and that *People v. Ballard*, 2025 IL App (4th) 241524-U, ¶ 23, which held that "the sale of drugs is a threat to the community," was "analogous." Concerning whether any conditions could mitigate the danger, the court stated that defendant scored "very high risk" on the VPRAI-R and that he had a "[p]ending case at [the] time of this offense, has had unsuccessful terms of probation," and "[t]o confine the defendant to his home would return him to the scene of his criminal activity."

¶ 20      The circuit court therefore ordered defendant's detention pending trial.

¶ 21                    B. Subsequent Continued Detention Orders

¶ 22      On April 3, 2025, defendant moved for release on electronic monitoring, arguing that he needed to be released to assist with the care of his five minor children. At an April 9 hearing on the motion, defendant's wife, Tamisha Raisbeck, testified that she needed defendant at home to help with the children so that she could go to work. No other testimony was presented.

¶ 23      We note that defendant's motion for release on electronic monitoring was heard at the same time as a petition for release in a separate case, in which he was charged with burglary of commercial premises. During its proffer concerning that case, the State advised that defendant had been identified on an in-store surveillance video and that he had admitted to being the individual on the video. Moreover, the vehicle identified on the outdoor video was registered to defendant's wife, which was the same vehicle in which defendant was present when stopped by police in the instant case. According to the proffer, "when asked why he committed the burglary, [defendant] stated that he was doing it for his family. They were going through financial problems."

¶ 24      After taking the matter under advisement, the circuit court denied defendant's motion. As the court explained:

"The concern this Court has—and it came out again today—is that [defendant] is in a position where he believes it is solely on him or primarily on him to provide for his family. In these two cases, [defendant], by clear and convincing evidence, has shown to the Court that he is willing to do whatever is necessary to do that to accomplish providing for his family. Goes back to his statement: I'm just trying to save my house and kids. That is a very heavy burden on any father. But it does not mean that you can run afoul of the law in doing so."

¶ 25 The circuit court also reiterated its concern over defendant's possession of a firearm, especially given the pending charges concerning possible drug dealing. According to the court, "[Defendant] indicated that he kept the weapon to protect himself because he believed that someone was after him."

¶ 26 The circuit court further explained:

"Now, it was previously argued and noted that [defendant] had indicated and admitted that he was holding the illegal drugs for someone else. Those of us who understand the law know that that in and of itself is enough to meet the State's burden of beyond a reasonable doubt at a trial. It places [defendant] in the position of being part of the drug delivery scheme.

The Court was concerned and remains concerned that [defendant's] need to have a weapon because he feels that he is a target is somehow related to his possessing—his possession of the illegal contraband. There's a lot going on in [defendant's] life right now. I think it was brought up that he was working and he had a pending worker's comp case related to an injury and was trying to schedule surgery."

¶ 27    The circuit court concluded:

"I'm very concerned about what's happening in [defendant's] life. I'm concerned about how those actions could filter into the community and into the public, how the need to possess a weapon could place the family members at-large if [defendant's] life is, in fact, in danger.

There's too much here—there's too much here—in the eyes of the Court to place him on electronic monitoring back in the house where the guns were, where the illegal drugs were. And it could be where the dealing may have been taking place."

¶ 28    Accordingly, the circuit court denied the motion, stating, "I cannot fashion conditions or a number of conditions that would provide, according to the statute, for [defendant's] release at this time."

¶ 29    On May 8, 2025, following a status hearing, the circuit court entered a written order reviewing defendant's continued detention, finding, pursuant to section 110-6.1(i-5) of the Code (725 ILCS 5/110-6.1(i-5) (West 2024)), that his continued detention was necessary based on the "non-probationary charges involv[ing] a weapon."

¶ 30                                C. Motion for Relief

¶ 31    On May 13, 2025, defendant filed what he entitled as a motion to reconsider the prior detention orders, although his motion does not reference the May 8 continuing detention order. Initially, we note that Rule 604(h) actually refers to this filing as a motion for relief. Ill. S. Ct. R. 604(h) (eff. Apr. 15, 2024). Nevertheless, we construe defendant's motion as a motion for relief. See *People v. Farah*, 2025 IL App (4th) 250322-U, ¶ 27.

¶ 32    Defendant's motion argued there were no specific articulable facts that would show

his pretrial release would post a real or present threat to the safety of any person or the community. The motion argued that (1) the handgun was found inside his house and that "no nefarious explanation was provided on who he posed a threat to"; (2) "the evidence of the firearm merely shows possession for potential protection within the confines of his home"; (3) "the Court relied on evidence of potential drug dealing yet presented nothing besides veiled arguments about the risk to the community in general, but never articulated a single identifiable person"; and (4) that "[m]ere concern for drug users should not be considered by this Court in determining threat to the community."

¶ 33     Furthermore, defendant argued that, even if there were facts sufficient to show he posed a threat, "the Court failed to consider conditions or combinations of conditions to mitigate the real and present threat to the safety of any person, persons or the community." He argued that the court should consider "home confinement, stay away orders and electronic home monitoring."

¶ 34     Defendant testified at the hearing on his motion that he wished to attend his daughter's scheduled surgery to place ear tubes and that his children had no one to look after them during the summer months. The State offered no additional evidence. Defendant's argument reiterated what had been previously argued and added, "Taking [defendant's testimony] into consideration with the lack of what I call recent criminal history, I'm asking the Court to release him on some kind of GPS home monitoring."

¶ 35     Defendant's motion was denied on May 21, with the circuit court finding, "The Court, since this motion was filed, has taken time to review the previous hearings, as they related to [defendant], and I find no reason at this time to [waver] from my prior decisions in this case. Defense motion is heard and denied."

¶ 36     Defendant filed a timely notice of appeal under Illinois Supreme Court Rule 604(h)

(eff. Apr. 15, 2024). This appeal followed.

¶ 37                                    II. ANALYSIS

¶ 38        On appeal, defendant filed a notice in lieu of a Rule 604(h)(7) memorandum; the

State filed a memorandum. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). We, therefore, are limited

to those issues raised in defendant's motion in the circuit court, which we have construed as a

motion for relief.

¶ 39        Section 110-6.1(e) of the Code presumes that all defendants are eligible for pretrial

release. 725 ILCS 5/110-6.1(e) (West 2024).

> "The presumption of release is overcome only if the State can prove by clear and
>
> convincing evidence that (1) the proof is evident or the presumption great that the
>
> defendant has committed a detainable offense, (2) the defendant poses a real and
>
> present threat to the safety of any person or the community based on the specific,
>
> articulable facts of the case, and (3) no condition or combination of conditions set
>
> forth in section 110-10 of the Code can mitigate that threat. *People v. Thomas*, 2024
>
> IL App (1st) 240479, ¶ 12 (citing 725 ILCS 5/110-6.1(e)(1)-(3), 110-10).

¶ 40        When parties to a pretrial detention hearing proceed solely by proffer, a reviewing

court "stands in the same position as the circuit court and may therefore conduct its own

independent review of the proffered evidence and evidence otherwise documentary in nature."

*People v. Morgan*, 2025 IL 130626, ¶ 51. In that circumstance, our review is *de novo*. *Id.* ¶ 54.

Since the initial detention decision was made based on the parties' proffers and no testimony was

received, we review the circuit court's detention decision *de novo*.

¶ 41                                   A. Dangerousness

¶ 42        Defendant first argues that the State failed to prove he posed a real and present

threat to the safety of any person or the community. Under the Code, all criminal defendants are presumed eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2024). The Code gives the circuit court broad discretion in choosing what factors to consider in making this determination, including the nature and circumstances of the offense charged and whether the offense is a crime of violence (*id.* § 110-6.1(g)(1)); defendant's history and characteristics, including whether there is evidence of violent, abusive, or assaultive behavior (*id.* § 110-6.1(g)(2)(A)); and whether, at the time of the current offense, the defendant was on parole (*id.* § 110-6.1(g)(8)). See *Woods*, 2024 IL App (4th) 240190, ¶ 16.

¶ 43          Defendant argues that the circuit court's finding of dangerousness was improperly based on the general notion that drug offenses harm society and not on any particular facts showing defendant posed a threat to the community. At the hearing, defendant cited *People v. Norris*, 2024 IL App (2d) 230338-U, and *People v. Drew*, 2024 IL App (2d) 230606-U, which held that the question of whether a real and present threat to the community exists may not be satisfied with reference to a "generalized risk of societal harm from drug crimes."

¶ 44          We find defendant's argument unpersuasive. In *Woods*, this court declined to follow *Norris* and *Drew* and instead concluded that the "societal harm from drug crimes is well-established in Illinois law, meaning the baseline question of whether the sale of drugs is a threat to the community has been answered." *Woods*, 2024 IL App (4th) 240190, ¶ 20. We continue to do so today. As in *Woods*, we need not answer the question of whether a generalized risk is alone enough to prove a defendant presents a real and present threat to the safety of the community, because numerous other factors show that defendant poses a real and present threat. See *id.* ¶ 21. Here, the circuit court's detention decision focused not only on defendant's drug possession with intent to distribute, but also on the dangers presented by defendant's possession of a firearm, that

defendant had a significant prior criminal history, and that he had, on several occasions, committed additional offenses while on probation.

¶ 45 The circuit court also observed, "What is concerning in this case, in addition to the amount of methamphetamine that was found with a scale in the residence and multiple clear bags, is that there was a loaded handgun that was found." As the court noted, defendant allegedly told the police that "he was keeping that gun for his personal protection." The court continued, "But if someone is holding product for someone else and that product is seized, there's going to be somebody unhappy." Section 24-1.1(a), which governs unlawful possession of weapons by felons, provides no exception for self-defense. 720 ILCS 5/24-1.1(a) (West 2024). The statute plainly prohibits "a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business *** any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." *Id.* We find these reasons equally compelling.

¶ 46 Even aside from our remarks in *Woods*, the remaining factors—*i.e.*, the nature and circumstance of the offense (725 ILCS 5/110-6.1(g)(1) (West 2024)), defendant's history and characteristics, including whether there is evidence of violent, abusive, or assaultive behavior (*id.* § 110-6.1(g)(2)(A)), and whether, at the time of the current offense, the defendant was on parole (*id.* § 110-6.1(g)(8))—all support a conclusion that defendant presented and real and present threat. Considering the nature of the offenses with which defendant was charged, his criminal history, and his known access to firearms, we conclude that the State met its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the community's safety.

¶ 47                                        B. Conditions

¶ 48 Section 110-6.1(e)(3) of the Code further requires the State to prove by clear and

convincing evidence that "no conditions or combination of conditions" as set forth in subsection 110-10(b) (*id.* § 110-10(b)) can mitigate the real and present threat to the safety of any person or the community. *Id.* § 110-6.1(e)(3). Defendant argues that the circuit court erred in determining that no conditions of release could mitigate the threat he poses and recommends conditions such as GPS monitoring and home confinement.

¶ 49    Initially, we note that these suggested conditions are only geographical limitations and would not necessarily prevent illegal activity within the designated geographical limit. As the circuit court aptly pointed out, defendant was allegedly using his home to sell drugs. The court stated, "Placing him on home confinement would in no way mitigate the situation because that is where the criminal activity was allegedly taking place." As the record shows, defendant has a history of continuing to commit crimes when on probation. He is on record stating that he would do whatever was necessary to support his family, which has in the past included breaking the law. During the hearing on the original petition to detain, the court found it significant that defendant had "a history of having probated sentences being terminated unsatisfied" and that there was "an allegation of failure to adhere to the conditions of probation or of a court order." We, too, find these factors significant. Electronic monitoring may be a valuable tool for courts to use, but a defendant with such an exhaustive record of noncompliance with the law and court orders is a poor candidate for this option. See *People v. Thomas*, 2024 IL App (4th) 240248, ¶ 26 (noting that electronic monitoring "does not diminish concerns that a particular defendant appears to present a greater risk of noncompliance").

¶ 50    We agree with the circuit court that the State proved by clear and convincing evidence that no conditions of release would be sufficient to prevent defendant from continuing to sell drugs and endangering the safety of the community. Accordingly, we affirm the circuit court's

initial detention order.

¶ 51                                    III. CONCLUSION

¶ 52            For the reasons stated, we affirm the circuit court's judgment.

¶ 53            Affirmed.